LYDIA H. McHUGH ET AL., PROPONENTS, V. MARGARET FITZGERALD ET AL., CONTESTANTS.

| 103 | 21 |
| 124 | 636 |

*Will—Mental competency—Undue influence—Evidence.*

A testatrix devised her entire estate to three of her five sisters, who presented the will for probate. Two of the half-sisters of the testatrix contested the will on the grounds of mental incompetency and undue influence. The testatrix died of pneumonia. The will was executed about noon of the day preceding her death. The devisees resided in another state. The testatrix directed them to be summoned, and they arrived the night previous to the execution of the will, and were present when it was executed. In affirming a judgment sustaining the will, the following points are decided:

    *a*—A physician who attended the testatrix during her last illness testified that he visited her four times the day the will was executed; that her mind seemed clear whenever she was spoken to; that she answered all questions intelligently, and seemed to appreciate everything that was going on about her, except when left alone, and that he thought she was competent to make a will. And it is held that the testimony

referred to the mental, and not to the physical, condition of the testatrix, and was clearly competent.

*b*—The opinion of the scrivener who drew the will as to whether or not undue influence was exercised was incompetent.

*c*—Evidence of the relations and intercourse existing between the testatrix and her sisters and half-sisters, and of her statements that she intended that the devisees should have her property, was competent.

*d*—The testatrix had no children. And it is held that any circumstances tending to show that she preferred the devisees to the contestants was competent, as showing a reason for the disposition of her property, and had an important bearing upon the question of undue influence.

*e*—The testimony of one of the proponents that the testatrix had stated to the witness that she intended to leave her property to the proponents was not within the prohibition of 3 How. Stat. § 7545, which provides that when a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness on his own behalf, shall not be admitted to testify at all as to matters which, if true, must have been equally within the knowledge of the deceased person.

*f*—A witness who, with her daughter, saw the testatrix in the evening of the day the will was executed, testified that she recognized both her and her daughter; that witness had no trouble in understanding the testatrix; that she told witness that she was taken sick the Sunday night previous; that witness asked if she could do anything for her, and she answered, "No;" that the testatrix seemed to understand and to be competent; that her mind seemed to the witness to be clear; that "she seemed to be clear enough." And it is held that this testimony cannot be construed into an opinion as to the competency of the testatrix to make a will, but only as to her condition at the time, and her ability to talk and understand.

*g*—The cross-examination of one of the proponents in probate court regarding certain admissions which it was claimed she had made, but which, when fairly construed, amounted to no more than a conjecture on her part that the testatrix might, if one of the contestants had been present when the will was executed, have made a different disposition of her property, proved no fact tending to show undue influence or mental incompetency, and was properly excluded under the ruling in *Renaud v. Pageot*, 102 Mich. 568.

Error to Wayne. (Frazer, J.) Argued October 9, 1894. Decided December 18, 1894.

Appeal from an order of the probate court disallowing the probate of a will. Contestants bring error. Affirmed. The facts are stated in the opinion.

*James H. Pound* and *Cassius Hollenbeck*, for appellants.

*Charles Flowers*, for proponents.

GRANT, J. The will of the testatrix, Mrs. Dunn, was contested on two grounds,—mental incompetency and undue influence. The jury rendered a verdict sustaining the will.

. Mrs. Dunn died of pneumonia. The will was executed about noon of the day preceding her death. The proponents, to whom the property was devised, were her sisters; the contestants, her half-sisters. The proponents lived in Buffalo, N. Y. Mrs. Dunn directed them to be summoned. They arrived the night previous to the execution of the will, and were present when it was executed.

There are 48 assignments of error, of which those will be noticed which we consider of importance.

1. Dr. Duffield Stewart had known Mrs. Dunn for 12 or 15 years, and attended her in her last sickness. He testified fully as to her condition and disease, and that,. "when left alone, she would wander off and talk to herself." He visited her four times the day the will was executed,—in the morning, about noon, late in the afternoon, and again in the evening. He testified that her mind seemed clear whenever she was spoken to; that she answered all questions intelligently; seemed to appreciate everything that was going on about her, except when she was left alone. He then testified, under objection, that he thought she was competent to make a will. The testi-

mony did not refer, as counsel claim, to her physical, but to her mental, condition. The testimony was clearly competent.

2. The scrivener who drew the will testified that the proponents were present; that Mrs. Dunn was very weak; that he did not think he understood a word spoken by her to him or anybody else; that she tried to speak, but he could not understand her. He further testified fully to all that was said and done by the proponents and by himself. On cross-examination by contestants' counsel, the witness was asked:

"So that, as far as that is concerned, while it might possibly have met her approval, practically that was the sisters' will?"

This was one of the questions, viz., that of undue influence, upon which it was the province of the jury to pass. His own opinion on this subject was incompetent and properly excluded.

3. Evidence of the relations and intercourse existing between Mrs. Dunn and her sisters and half-sisters, and prior statements that she intended the proponents should have her property, were competent evidence for the consideration of the jury. Mrs. Dunn had no children, and any circumstances tending to show that she preferred the proponents to the contestants was competent, as showing a reason for the disposition of her property, and had an important bearing upon the question of undue influence.

4. The testimony of one of the proponents that Mrs. Dunn had stated to her that she intended to leave her property to them is not within the prohibition of section 7545, 3 How. Stat. *Brown v. Bell*, 58 Mich. 58; *Schofield v. Walker*, 58 Id. 96; *Lautenshlager v. Lautenshlager*, 80 Id. 290.

5. A Mrs. Bayliss had known Mrs. Dunn for about 25 years. She and her daughter saw Mrs. Dunn in the even-

ing of the day the will was executed. She testified that Mrs. Dunn recognized them both; that witness had no trouble in understanding her; that Mrs. Dunn told her she was taken ill the Sunday night previous; that witness asked her if she could do anything for her, to which she replied, "No;" that, while witness was fanning her, she had occasion to get up; that she called for Jennie, and asked witness to leave the room. The witness was then asked, "Would you say at the time whether she understood or was competent?" to which she replied, "She seemed to be."

"*Q.* What would you say as to whether at that time her mind was clear?

"*A.* It seemed to me to be. She seemed to be clear enough."

We think this testimony cannot be construed into an opinion as to her competency to make a will, but only as to her condition at the time, and her ability to talk and understand. The claim was made by the contestants that she had then lost the power of speech. It is not clear that the witness' opinion as to her competency to make a will would not have been proper, under the decision in *People v. Borgetto,* 99 Mich. 336. We find no error in this.

6. A physician testified for the contestants that a delirious person was not competent to comprehend business subjects, and gave other similar testimony, based upon hypothetical questions. On cross-examination the witness was permitted to answer, under objection, several questions, of which the following is an example:

"Suppose this woman, on Saturday morning, should tell her sisters and those around her that she wanted some one to go and get somebody to make a will. Would that be evidence of delirium?"

These questions covered certain facts which the pro-

ponents claimed to have proven. The questions might very properly have been excluded, as it required no evidence to substantiate the facts inquired about. It is common knowledge that the conditions referred to in the questions are not evidence of delirium, but of its absence. We cannot therefore hold that the testimony was prejudicial.

7. Testimony was introduced showing that contestants took no steps to contest this will until approached by an attorney who went from Detroit to Buffalo to see them about instituting suit. The court subsequently ruled all this testimony out, and instructed the jury that they must not consider it. The error complained of was thus cured.

8. Mrs. Shattuck, one of the proponents, testified in the probate court. Counsel for contestants offered in evidence a portion of her cross-examination in that court, in which she testified that she asked Mrs. Dunn if she wanted to make a will, and also the following:

" Q. Don't you think, if there had been another sister there, the property would have gone to the four?

" A. Perhaps it would. I could not say as to that.

" Q. Didn't you say as much to a friend afterwards?

" A. I said, if they were there, perhaps they would have got a share.

" Q. Did you say 'perhaps'?

" A. I guess I did.

" Q. Didn't you say it was because the other sisters were not there that she gave you the property?

" A. I think perhaps, if they were there, she would have shared it. I could not say she would, but I think perhaps, if they were there, she would have shared it; perhaps even with them."

It is insisted that this was an admission against the interest of Mrs. Shattuck and the other proponents, and was, therefore, competent, under the decision in Re Estate of Lambie, 97 Mich. 49. In that case the admission was that the will had been revoked. The testimony in this case refers to no fact, but, fairly construed, amounts to

no more than a conjecture on the part of the witness that Mrs. Dunn might have made a different disposition of her property. It proved no fact tending to show undue influence or incompetency. We think the court was justified in excluding it, under the ruling in *Renaud v. Pageot*, 102 Mich. 568, and authorities there cited.

9. Many errors are assigned upon the charge of the court. We deem it unnecessary to mention them specifically. The charge was very full and fair, and clearly defined the two issues to be determined by the jury. Several of the requests of counsel for contestants were given, three of which are as follows:

"Unless proponents have satisfied the jury, by a preponderance of evidence, that Delia Dunn understood substantially the nature of the act she did in making the will, and the same was her own act, and unless, too, she understood the nature of the act, the extent of her property, her relations to others who might or ought to be the objects of her bounty, and the scope and bearing of the provisions of her will, and had sufficient active memory to collect in her mind, without prompting, the elements of the business to be transacted, and to hold them in her mind a sufficient length of time to perceive at least their obvious relations to each other, and to be able to form some rational judgment in relation to them, then she was mentally incompetent to make a will, and the paper in suit is not her last will and testament; that is, if you shall find that she was incapable of doing all these things at the time of the execution of the will, then, being incompetent to make a will, if you shall so find, you shall declare this paper not to be her last will and testament."

"The will must have been the free, voluntary act of Delia Dunn, not that of her sisters; and, if the jury believe the paper offered in evidence is the product of the sisters Mrs. Shattuck, Mrs. Young, and Mrs. McEwan, then it is not the will of Delia Dunn, and it should be disallowed by the jury."

"If the paper in suit is the result of the exercise of will upon Delia M. Dunn in her sickly and dying condition,—that is, provided you shall find she was in that condition,—she could not resist, and did not resist them,

this paper is not her will; and if the jury believe this paper is the product of the instructions of the people who surrounded Delia M. Dunn, and that she herself gave the man who drew it no instructions in reference thereto, and the jury do not believe, from the evidence, she understood it, or formed any independent idea in reference thereto, then it is not her will.   *   *   *   If she expressed her will in any way to anybody, and this paper was made out, and she approved of it, it is not necessary that she should have dictated it to the scrivener of the will. That it was her wish, and not that of the person profiting by it, before it became her will,—unless the jury so find, they should, by their verdict, certify that it was not her will; and if the jury believe that it was the result of importunity or direction, which she, in her state, could not exercise, then this paper is not her will, because unduly influenced."

These requests covered specifically the issues involved. They were enlarged upon by other requests and in the oral charge. The entire charge was a correct embodiment of the law.

The judgment is affirmed.

The other Justices concurred.