*In re* DAILEY'S ESTATE.

DAILEY *v.* McCARTHY.

1. TRIAL—WILLS—EVIDENCE—CONDUCT OF COURT.

Where the trial court excluded the opinions of some of the witnesses for proponent in a will contest, but later, after examining into the point, overruled the objection and permitted the witnesses to testify, any prejudice which may have resulted from the original ruling was cured.

2. WITNESSES — EXECUTORS AND ADMINISTRATORS—KNOWLEDGE OF DECEDENT.

An administrator with will annexed, who appeared in a contest over the will as a party to the cause only by virtue of his interest as administrator of the estate but was not a proponent of the will, was not an opposite party as to the contestants within the meaning of 3 Comp. Laws, § 10212 (5 How. Stat. [2d Ed.] § 12856), excluding testimony of the opposite party as to matters equally within the knowledge of decedent. It was error to exclude questions of contestant's counsel what the admin-

istrator saw and heard in an interview with the testator who was a near neighbor. of the administrator and had known him well for 42 years.

Error to Kent; Cogger, J., presiding. Submitted January 23, 1914. (Docket No. 91.) Decided June 1, 1914.

Mary McCarthy presented for probate an alleged will of Dennis Dailey, deceased, which was allowed in the probate court and the contestants appealed to the circuit court; being joined by the said Mary McCarthy, in contesting the validity of the instrument. Martin Whalen, administrator of the estate of decedent, and the proponents bring error from a judgment denying the probate of the will. Reversed.

*Powers & Eardley,* for appellants.

*Martin H. Carmody* and *William F. McKnight,* for appellees.

STEERE, J. This is a contest over the last will and testament of Dennis Dailey, formerly of Wyoming township, Kent county, Mich., who died in the city of Grand Rapids on November 3, 1910, at the age of about 67 years, leaving an estate of uncertain value, consisting of over $3,500 of personal property and 40 acres of land lying close to the city of Grand Rapids, valued by certain witnesses as high as $10,000; the whole estate, however, being estimated in the petition for probation of his will at approximately $7,000. He never married, and was survived by a brother, Jeremiah Dailey, residing in Nebraska, a sister, Mrs. Mary McCarthy, and four nieces and nephews residing in Minnesota, and a niece and nephew apparently residing in Massachusetts.

On April 30, 1910, while a patient at a hospital in Grand Rapids, deceased executed the will in controversy, by the terms of which he bequeathed $600 to

his sister, Margaret (Mary) McCarthy, $100 to his parish priest, $5 to each of four nephews and nieces, and the remainder of his estate to his brother, Jeremiah Dailey.

The instrument in question is in legal form, appearing on its face to have been executed in compliance with all statutory requirements. It was filed with, and admitted to probate in, the probate court of Kent county, on the petition of Mary McCarthy, after a contest in which she was one of the contestants, protesting against its admission to probate. Subsequently the proceedings were removed by appeal to the circuit court, in which she joined with other contesting heirs, where a trial by jury resulted favorably to the contestants. The contest was made upon the grounds of undue influence and mental incompetency.

It was claimed by contestants, and testimony was introduced tending to show, that the alleged mental incompetency resulted directly from an attack of apoplexy followed by partial paralysis, which came upon deceased but three days before the date of the will, and that failing health occasioned by hardening arteries naturally led up to, and caused, the apoplexy; that subsequent to the attack he was removed to a hospital, where he remained until his death, his mind being seriously impaired and enfeebled to such an extent that he was wholly incapacitated to understandingly transact any business, and mentally incompetent to make a will. This claim is further emphasized and elucidated by the testimony of experts, produced by contestants who, in answer to hypothetical questions pages in length, state that deceased must have been, and in truth was, suffering for a considerable time before the making of his will with general atheroma and arterial sclerosis, which were the superinducing causes of the apoplectic stroke, and that mental impairment and incompetency existed as the inevitable

result of his malady; while experts called by proponent testify to the contrary in answer to equally long hypothetical questions, and say that deceased's mental condition at the time of the execution of his will was such that he was perfectly competent to transact such business understandingly, and possessed of sufficient testamentary capacity to dispose of his estate, asserting that, even though affected with the maladies testified to by experts upon the opposite side, it did not follow that his intellect was materially impaired, because persons affected with general atheroma and arterial sclerosis could be, and often were, mentally normal, and competent not only to understandingly make testamentary disposition of their property, but to follow intellectual pursuits.

In support of the will it was claimed, and testimony was introduced tending to show, that the condition of deceased on the day he went to the hospital was not such, nor so serious, as claimed by contestants, and did not result from a stroke of apoplexy, but from an attack of vertigo coming upon him while at work following a very hearty meal; that shortly thereafter he was able to walk and talk, and had possession of his faculties as before, although, realizing he was in failing health, he followed the advice of his pastor and went to the hospital, where he remained until his death, which was six months later; that at the time he went there and when he made his will he was in full possession of his mental faculties, knew his relatives and friends, visited with them, and discussed his business affairs, understood the nature and extent of his property and what disposition he desired to make of it; that, in speaking of his business matters with his brother, who had come to visit him, he asked for a notary to get his affairs settled, and, in compliance with this request, an attorney, who was a notary, was summoned and introduced to him, who, after some general conversation, prepared the will

while alone with deceased in his room, summoning two nurses as witnesses when the instrument was ready for execution. They testified to facts showing compliance with legal requirements, and to testator's participation in, and apparent understanding of, what was being done, as indicated by remarks made by him while executing the will, telling the attorney, who started to read the will in their presence, that he need not read the rest of it, as testator knew all that was in it.

The two grounds of contest, upon each of which there was abundance of sharply conflicting testimony, were submitted to the jury, in connection with the general charge of the court, by special questions, which, with their answers, are as follows:

"(1) Q. Was undue influence used upon Dennis Dailey in making the will in question? A. No.

"(2) Q. Was Dennis Dailey on April 30, 1910, at the time of making the will in question, mentally competent to make said will? A. No."

The question of undue influence having been decided by the jury in appellants' favor, the 201 assignments of error in this record, upon all of which we are advised appellants rely, relate to the issue of mental incompetency. A careful reading of the record convinces us that most of these are not well founded and call for no serious consideration. Many of them involve a contention that in the general conduct of the case the attitude of the court was adverse to those seeking to sustain the will, and prejudicial to a fair trial.

Nineteen assignments of error and many pages of appellants' brief are devoted to tentative rulings of the court sustaining objections to subscribing witnesses giving their opinion as to the mental competency of testator, at the time of executing his will; they having related their means of observation and facts upon which they based their opinions. One of

these witnesses was allowed to testify to her opinion before leaving the stand; the other later. Although the latter's testimony was insisted upon and considerable discussion had, the court expressed a purpose to further investigate the question before admitting the testimony and said:

"If I am satisfied later that I am wrong about that I will not hesitate to reverse the ruling."

This occurred during a session of the court on Saturday, and at the opening of court on Monday the court called up the matter of this ruling, stated he had announced at that time he would investigate the question and might change said ruling, and that, after giving the matter some study, he had decided the testimony was competent, and he would allow it. The evidence of the witness was thereupon introduced. Full latitude was finally given in the examination of both witnesses upon that subject. Counsel now insist the conduct and remarks of the court in the first instance belittled this testimony and were prejudicial, stating that such "prejudice to proponents would not have arisen  *  *  *  if he had less stubbornly refrained from ruling upon something with which he had absolutely nothing to do, and constantly reminding the jury that the opinion of those witnesses was not of sufficient value to be entitled to their consideration." The last utterance of the court upon such ruling was to the effect that he was previously mistaken and the opinions of those witnesses were entitled to be considered by the jury. We have examined all that was said by the court and counsel in connection with this matter, and conclude that the subsequent admission of the testimony obviated the error previously committed. *Cool* v. *Snover*, 38 Mich. 562; *Mason* v. *Partrick*, 100 Mich. 577 (59 N. W. 239). While other isolated remarks of the court pointed out by counsel as prejudicial might be considered as cap-

tious, when considered alone, when read with the record as a whole, they do not impress us as of the import or importance contended for. We do not discover from this record that the court disclosed any opinion on the merits of the case or special inclination to favor either side of the controversy.

Some confusion appears in certain parts of the record, and possible misunderstanding, as to who were parties to these proceedings. The original proponent of said will, and, so far as the record shows, the only one who ever filed a formal petition for its probation, was Mary McCarthy, deceased's sister and a beneficiary under said will to the extent of $600. After starting the machinery of the court in motion, she, with other heirs, filed objections and contested the probation. The order admitting the will to probate recites that upon the date appointed for hearing said petition, and when objections had been filed by Mary McCarthy, Jeremiah Dailey appeared by counsel as proponent in support of said petition. The order made upon said hearing, after reciting in proper form the admission of said will to probate, appointed Martin Whalen administrator of said estate, with the will annexed. He and Jeremiah Dailey appear to be sometimes collectively referred to in the record as the proponents, although Whalen's name is first found in the records as administrator after the will was probated, and only in that capacity. He was not a proponent, and it was stated on the trial, by counsel for Jeremiah Dailey, that they represented Whalen only as administrator of the estate. He was called as a witness by proponent Dailey to testify to deceased's mental competency. Objections to certain questions asked him were sustained on the ground that he was an opposite party, precluded by statute from testifying to matters which, if true, must have been equally within the knowledge of deceased.

We are impelled to hold, under a well-settled line

of authority, that the proposed testimony was erroneously excluded, and upon this record are unable to say this was harmless error. Whalen was a near neighbor of deceased, and knew him intimately for 42 years, seeing him often. Two days before he went to the hospital deceased called at witness' place and stayed about an hour. Witness also visited deceased while in the hospital, where he observed his condition and appearance and conversed with him. Objections were sustained to the following questions:

"*Q.* Well now, tell the court and jury what you observed and what you heard him say and what your conversation was at that time."

"*Q.* What have you to say as to his health and physical condition and his mental condition on these two occasions?"

The court ruled that this witness could give no conversations with deceased, nor testify as to what he talked about, nor the things said by him, nor state what witness observed as to his mental condition, nor express any opinion as to his mental competency based on facts seen and known by witness.

Contestants were permitted to thoroughly cover all this range of inquiry with witnesses of shorter acquaintance, and apparently less intimacy and opportunity for knowledge than Whalen. His proposed testimony bore directly upon the one controlling issue decided adversely to proponent, and was only rejected on the theory that he was an "opposite party," within the meaning of section 10212, 3 Comp. Laws (section 12856 [2d Ed.] 5 How. Stat.). Whalen was neither a propent nor contestant. He was not interested as an heir or legatee; the proceeding was not against him nor the estate as such; it did not seek to deplete the estate, but was only to obtain an adjudication of how it should be distributed. The statute did not apply to him. This subject has been fully adjudicated, and is discussed in its various aspects more or less

directly in point in the following cases: *Brown v. Bell*, 58 Mich. 58 (24 N. W. 824) ; *Schofield v. Walker*, 58 Mich. 96 (24 N. W. 624) ; *Duryea v. Granger's Estate*, 66 Mich. 593 (33 N. W. 730) ; *Lautenshlager v. Lautenshlager*, 80 Mich. 291 (45 N. W. 147) ; *McHugh v. Fitzgerald*, 103 Mich. 21 (61 N. W. 354) ; *Moore v. Machen*, 124 Mich. 216 (82 N. W. 892) ; *Tabor v. Tabor*, 136 Mich. 255 (99 N. W. 4) ; *Ashley v. Smith's Estate*, 152 Mich. 197 (115 N. W. 1052) ; *Freda v. Tishbein*, 174 Mich. 391 (140 N. W. 502).

As this error demands a retrial of the case, we deem it unimportant and unnecessary at this time to further consider other questions raised.

The judgment is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.