## In re WALTER'S ESTATE.

1. WILLS — WITNESSES — CONTESTANTS NOT OPPOSITE PARTIES—
STATUTES.
   Contestants in a will contest case, not being opposite
   parties within the meaning of 3 Comp. Laws 1915, §
   12553, their testimony to facts equally within the knowl-
   edge of deceased testatrix is not barred thereby.

2. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.
   It was reversible error for the trial court to exclude the
   testimony of contestants on the ground that it was pro-
   hibited by the statute as equally within the knowledge of
   deceased testatrix.

3. SAME—MENTAL INCOMPETENCY—EVIDENCE—SUFFICIENCY.
   Testimony as to the mental incompetency of testatrix,
   viewed in the most favorable light, held, insufficient to
   take the question to the jury.

4. SAME—EVIDENCE—PROPER FOUNDATION—OPINIONS.
   Before non-expert witnesses may be allowed to express an
   opinion as to the mental incompetency of testatrix, they
   must testify to some facts inconsistent with sanity.

5. SAME.
   Where witnesses had not testified to facts sufficient to
   justify them in expressing an opinion as to the mental
   incompetency of testatrix, there was no error in excluding
   their opinion thereon.

6. SAME—FRAUD—EVIDENCE—QUESTION FOR JURY.
   Testimony on the part of contestants, held, sufficient to
   entitle them to the verdict of the jury on the question
   as to whether the will was executed by testatrix as and
   for her last will and testament with a knowledge of its
   contents and free from fraud.

7. SAME—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY.
   Since the testimony of contestants tended to establish
   their claim that testatrix did not intelligently execute
   the paper offered for probate, it cannot be said that the

trial court was in error in refusing to submit to the jury the question of undue influence.

Error to Wayne; Codd (George P.), J.   Submitted June 7, 1921.   (Docket No. 21.)   Decided October 3, 1921.

Anna Schonfield presented for probate the last will of Anna Walter, deceased.   The will was allowed in the probate court, and August Gutt and others appealed to the circuit court.   Judgment for proponent on a directed verdict.   Contestants bring error.   Reversed.

*Harry J. Lippman* (*Ralph W. Liddy,* of counsel), for appellants.

*Edward R. Monnig* (*Frank A. Martin,* of counsel), for appellee.

FELLOWS, J.   The admission to probate of the will of Anna Walter by which practically her entire property was given to a daughter, Anna Schonfield, is contested in this proceeding by the remaining five children of deceased on the usual grounds of mental incompetency and undue influence, and the further ground that her signature to the will was procured by the fraudulent representations that it was an instrument executed for the purpose of preventing the heirs of her deceased husband taking her property from her and that she executed the will in ignorance of its contents.   At the close of the contestants' proof the trial judge directed a verdict against them.   The assignments of error are numerous and need not all be discussed.   Such facts as are necessary to an understanding of the case will be stated as we proceed.

The trial judge upon the objection of proponent's counsel refused to permit one of the contestants to testify to facts equally within the knowledge of de-

ceased upon the theory that such testimony was prohibited by section 12553, 3 Comp. Laws 1915.   In this the trial judge was in error.   We have repeatedly held that the "opposite party" statute is not applicable to will contests.    Brown v. Bell, 58 Mich. 58; Schofield v. Walker, 58 Mich. 96; Lautenshlager v. Lautenshlager, 80 Mich. 285; McHugh v. Fitzgerald, 103 Mich. 21; In re Dailey's Estate, 180 Mich. 473; In re Doty's Estate, 212 Mich. 346.   In this court counsel for proponent claim that this ruling does not constitute reversible error as the questions asked should have been excluded on other grounds.   The record, however, discloses that the witness was being asked some preliminary questions when the objection was made.   The trial judge not only sustained the objection but also prevented contestants' counsel from further perfecting the record by directing the witness to leave the stand.   Later when the question came up again the jury was excused and contestants' counsel was quite severely reprimanded for attempting to put in testimony of contestants inhibited by the former ruling.   We do not know what these contestants' testimony would be; their counsel was prevented from asking questions to develop it.   Under our decisions they were competent witnesses and it was reversible error to exclude their testimony.

We shall not detail the testimony on the question of mental incapacity.   Viewed in its most favorable light it did not take this question to the jury.   Hibbard v. Baker, 141 Mich. 124; Blackman v. Andrews, 150 Mich. 322; In re Williams' Estate, 185 Mich. 97; Leffingwell v. Bettinghouse, 151 Mich. 513; In re Doty's Estate, supra, and authorities there cited.   Nor was there error in the holding of the court that certain witnesses had not testified to sufficient facts to justify them in expressing an opinion that testatrix was mentally incompetent.   Before non-expert witnesses

may be allowed to give such opinion they must testify to some facts inconsistent with sanity.     *Hibbard v. Baker, supra.*

It becomes necessary that we should detail some of the testimony upon the question of whether there was sufficient to take to the jury the question of whether the testatrix executed the will with knowledge that it was a will, of its contents, or whether she executed it supposing it was a paper for another purpose. There was testimony that deceased had said that her property should be equally divided among her children.     The scrivener who drew the will was not produced as a witness.     It was executed in the office of Dr. Hagen, and he and a Mrs. Lakinsky were the subscribing witnesses.     Dr. Hagen had not a definite recollection of all the details but does testify to due execution of the will.     Mrs. Lakinsky, who says she had known deceased many years, says she was called to Mrs. Schonfield's home by Mrs. Schonfield.     She found Mrs. Walter there.     She asked her to be a witness to a will for Mrs. Schonfield, saying that she was the only one who had helped her, that the others had not.     The deceased, Mrs. Schonfield and Mrs. Lakinsky went to Dr. Hagen's office where he read the will over to Mrs. Walter in English, and it was there executed.     This witness on cross-examination made several contradictory statements upon material matters.     Contestants produced numerous witnesses whose testimony tended to show that testatrix could not understand English.     If this testimony was true, and its credibility was for the jury, there is a failure of evidence that the will was ever read to testatrix in a language she could understand.

There was testimony tending to show that when deceased would be riding with other relatives she would request them not to drive by the Schonfield home as she was afraid to have Anna see her with

them. She was invited to a Christmas dinner by one of her daughters but did not come; when later asked why she did not come she said Anna would not let her come. Anna's husband was the executor of the will of Mr. Walter who died some three or four months before the will in question was made. Both Mr. and Mrs. Walter had been married before and each had grown up families. By Mr. Walter's will his widow was given the income of certain real estate which at her death went to his children. Mrs. Walter complained that she was unable to get this income, she said that when she went there after money Mr. Schonfield would tell her to get out, that he had no money. There is testimony that he intimated to one of the other sons-in-law that she would have to be placed in Eloise.

The will in question was executed the latter part of February and there is testimony from one of her sons-in-law, a Mr. Neuman, that shortly after this she came to their house about some paper she had signed.

We quote from his testimony:

"* * * it must be some time the last of February or March, when she came over and told us about the paper, that they had been taken away from her.

"Q. Who said that?

"A. Mr. and Mrs. Schonfield had taken her somewhere to sign papers and that they were afraid that the heirs on the other side would take her home away from her.

"Q. Did she say who it was had made this paper?

"A. Why, she said Mr. Grosfield had made it—had drawn up some paper about the house and I asked her, Have you signed it?

"Q. Some paper about the house?

"A. Yes, and I asked her—I said, mother, have you made a will or signed a will, and she said no, I have not signed any will. I made no will.

"Q. When was this conversation?

"A. It was along in the last of February or the first of March.

"Q. Of what year?

"A. The year she died.

"I asked her if she had signed a will or made a will and she said no, they took me over and said if I did not sign this paper that the other heirs could take the house away from me and leave me out on the street. I said, did you sign a will, mother, and she said no, I signed nothing only they made me sign this paper so that they could not throw me out of my home."

While Mrs. Walter's statement was not evidence of the fact, it was evidence of the state of her mind. Mr. Neuman called Mrs. Schonfield up and asked her if her mother had made a will, and she replied no, that her mother had made no will.

In the following spring Mrs. Walter came to Mr. Neuman's bringing with her a bundle of clothes and said she wanted to live with them. She remained there until her death and there is testimony that she daily worried about a paper she had signed. A lawyer was consulted about getting it for her, but it seems he did not succeed. She finally became so worried that she frequently said that she would die if she could not get the paper, and in the fall she did commit suicide by poisoning. The day following her funeral Anna came to one of the sisters and cried and said her conscience was troubling her; that her mother had made a will giving her the property, but that it should be divided equally among the children.

When we consider the testimony in this somewhat voluminous record, some of which we have quoted, and some other, but not all, we have adverted to, having in mind, as we must have, the rule that the verdict being directed against contestants the testimony with its legitimate inferences most favorable to them must be accepted, we are constrained to hold that they were entitled to take the verdict of the jury on the question of whether the will in question was

215—Mich.—37.

executed by the deceased as and for her last will and
testament with a knowledge of its contents and free
from fraud in procuring her signature to it.

As we have stated, the testimony of contestants
tended to establish their claim that deceased did not
intelligently execute the paper offered for probate.
This testimony, we are persuaded, negatives their
claim of undue influence. Manifestly, if the deceased
signed the paper without knowing she was executing
a will it cannot be claimed that she was unduly in-
fluenced to will the property to her daughter Anna.
We are not persuaded upon the record as made that
the trial judge was in error in refusing to submit to
the jury the question of undue influence.

For the errors pointed out the judgment will be
reversed with a new trial. Contestants will recover
costs of this court.

STEERE, C. J., and MOORE, WIEST, STONE, CLARK,
BIRD, and SHARPE, JJ., concurred.