For two years prior to his fatal illness, Matt Miller, an unmarried man, 53 years of age, had resided in an apartment building in Detroit managed by Katherine Layman. According to the testimony introduced by plaintiff, Miller was exceptionally quiet. He worked for Burroughs Adding Machine Company, but associated with no one in the factory socially. He, however, was on very friendly terms with Mrs. Layman and her husband, John L. Layman.
On September 14, 1934, Miller was found in a very serious condition and taken to Providence Hospital. On the following day and for several days thereafter, he remained in a stupor, unwilling or unable to talk, according to the testimony of Dr. Caton who was then an interne in the hospital. She, however, did not attend him after September 17, 1934. A Dr. Cooper saw him repeatedly thereafter up to the time of his death. Dr. Cooper, however, as an interne, had 30 patients to see each day and he stated that in making the rounds each morning, he spent from one hour to two or three minutes for his visits. When questioned as to when he devoted an hour to looking after Miller, he stated that on September 27, 1934, he spent an hour making a physical examination of Miller. On September 19, 1934, Dr. Cooper found the patient in a somewhat improved condition but unable to talk so Dr. Cooper could understand him. On the following day, his condition was improved. Three days later he was attempting to get out of bed. On September 26 and 28, 1934, Dr. Cooper testified that the patient refused *Page 13 
to talk or respond to questions asked and that this was the condition up to October 4, 1934, when Miller was found unconscious at 6:45 a. m. He died a few hours later.
Miller's entire estate was bequeathed to Katherine Layman in a will dated October 2, 1934. Mrs. Richards testified that on a visit to Miller on October 1, 1934, he gave her the details of the proposed will and thereupon she had it prepared by an attorney; that on the following day the will was duly executed, Mr. Layman and Mrs. Richards, a friend for many years, acting as witnesses. According to the testimony, the will was handed to Miller by Mrs. Richards. He first looked at the will and then asked Mrs. Richards to read on from the place indicated by him. He had only read the introductory statement of the will and Mrs. Richards read the balance to him. The will revoked all previous wills and left all of Miller's property to Mrs. Layman; it stated that she and her husband had been his only friends for the past two years and that during his present illness, none of his relatives had shown any interest in him whatsoever. Mrs. Richards testified that Miller could not use his right hand and that after making a futile effort to sign with his left hand and poorly writing the first three letters of his given name, she guided his hand while he made the mark of an "X" which she completed by adding the words "his mark," and "Matt Miller," and thereupon she and Mr. Layman signed as witnesses. Mr. Layman testified that Miller stated when he signed the document that it was his will.
The will was duly admitted for probate and the State of Michigan appealed to the circuit court on the ground that Miller was not mentally competent to make the will; that he left no legal heirs to inherit his estate and that therefore the estate would escheat to *Page 14 
the State of Michigan in accordance with 3 Comp. Laws 1929, § 13440. The right of the State to maintain these proceedings was upheld in Re Estate of Matt Miller, 274 Mich. 190.
On the hearing in the circuit court, the trial judge directed a verdict for proponent on the ground that the testimony did not show that Miller was incompetent; that to show that a person was not competent for 19 days it would be necessary to have the testimony of some one who saw that person constantly, and not of one who saw him at rare intervals; that there is no presumption that because a person is in a comatose state for a portion of the time, he might not have lucid intervals.
Without attempting to lay down any general rule on the subject, so as to cover all factual situations, we believe the trial judge was correct in directing a verdict. There is no testimony showing that the testator was incompetent at the particular time when he made the will. Dr. Caton did not see the patient for a period of almost two weeks prior to the making of the will. A personal investigator, representing Miller's employer, testified that Miller was in a bad condition, but it developed that notwithstanding the testimony of Dr. Cooper, Miller on September 24, 1934, was able to direct a change of beneficiary in his insurance policy. Dr. Cooper was unable to recall the details of the case without the use of the hospital records which were introduced. They included the daily record of the case kept by the nurse, a person in constant communication with the patient. It showed that there was a gradual improvement in Miller's condition from the time he went to the hospital up to immediately prior to his death. At first he was absolutely unresponsive and he had much difficulty with his throat. However, on the fifth day after Miller was taken to the hospital, the record shows *Page 15 
that he talked when spoken to. On the following day, the record shows that his condition was improving and that he talked more rationally. The subsequent entries show his condition was fair or remained the same. There, however, seemed to be a slight gradual improvement. With the testimony of proponent and her two witnesses, the showing by contestant that the testator had the mental capacity to direct a change of beneficiary in the insurance policy and the further facts shown by the nurse's chart, we are impressed with the fact that appellant did not overcome the burden cast upon him by 3 Comp. Laws 1929, § 14212, to prove mental incapacity. In coming to our conclusions we have given due weight to contestant's testimony, as the verdict was directed.
The judgment of the lower court is affirmed, with costs to appellee.
NORTH, C.J., and FEAD, WIEST, BUSHNELL, and SHARPE, JJ., concurred. POTTER and TOY, JJ., did not sit.