*In re* PAUL'S ESTATE.

1. WILLS—FAILURE TO CALL AVAILABLE SUBSCRIBING WITNESSES—PRESUMPTION OF MENTAL COMPETENCY—STATUTES.

   Proponent's failure to produce available subscribing witnesses to will involved in a contest did not render inapplicable statute relative to presumptive mental competency of a testator (3 Comp. Laws 1929, § 14212).

2. SAME—MENTAL COMPETENCY—BURDEN OF PROOF—INSTRUCTIONS.

   Repeated instructions to jury in a will contest that proponent had burden of proof to show mental competency of testatrix was reversible error, the statute placing burden of showing mental incompetency on the one who contests the will (3 Comp. Laws 1929, § 14212).

3. EVIDENCE—MENTAL COMPETENCY—OPINIONS—CIRCUIT JUDGE—ATTORNEY.

   Before a lay witness may be permitted to express his opinion that a testatrix was not mentally competent to execute a will, he must testify to facts or circumstances which have a logical tendency to justify his opinion as to incompetency and a circuit judge and attorney by whom it was sought to show testatrix was mentally incompetent are subject to the same rule.

4. SAME—MENTAL COMPETENCY—CIRCUIT JUDGE AS WITNESS.

   A sufficient foundation to enable a circuit judge to testify as to incompetency of testatrix *held*, shown where he had presided at an equity case in which she appeared as a defendant and cross-plaintiff by guardian *ad litem* about five months after will was executed and he released her from certain contractual obligations on the ground of mental incompetency.

5. SAME—MENTAL COMPETENCY—ATTORNEY AS WITNESS.

   Testimony of mental incompetency of testatrix to execute will, given by attorney who drafted the will, interviewed testatrix, represented her in litigation and transacted other business

with her *held,* competent, circumstance that some transactions would be void or voidable if she were mentally incompetent, merely affecting the weight of his testimony but not justifying its exclusion if it was otherwise competent.

6. Wills—Mental Competency—Evidence.

   In will contest where the instrument was sought to be held invalid because of mental incompetency of testatrix, refusal to take case from jury on ground there was no competent proof of mental incapacity *held,* correct.

7. Witnesses—Will Contest—Cross-Examination of Proponent.

   The proponent of a will who offers herself as a witness in a will contest to establish validity of her mother's will, in which proponent was the principal beneficiary, is subject to cross-examination as to any matter germane to the issue of mental competency being tried; hence it was proper to admit as exhibits such daughter's petition for appointment as guardian *ad litem,* consent to act as such, and amended answer and cross bill, all of which had been signed by proponent, two of them sworn to by her, and each was inconsistent with her present claim of competency.

8. Wills—Contest—Proponent Should Call Subscribing Witnesses.

   Where due execution of a will is contested, the proponent should produce in court for examination at least two subscribing witnesses, if they are within the court's jurisdiction and competent to testify (3 Comp. Laws 1929, § 15541 *et seq.*).

Appeal from Wayne; Taylor (Mark D.), J., presiding. Submitted January 13, 1939. (Docket No. 81, Calendar No. 40,362.) Decided June 22, 1939.

In the matter of the estate of Minnie Paul, deceased. Sadie Brow presented the will of Minnie Paul for probate. Objections were filed thereto by Florence and Helen Paul. Case certified to circuit court for trial. Verdict and judgment for contestants. Proponent Sadie Brow appeals. Reversed and new trial ordered.

*Frederic T. Harward* and *Marr & Cahalan,* for proponent.

*Dykema, Jones & Wheat (Nathan B. Goodnow,* of counsel), for contestants.

North, J. Mrs. Minnie Paul died January 17, 1938. When her will was offered for probate by her daughter, Sadie Brow, in the probate court of Wayne county, objections were filed, and the proceedings were certified to circuit court. On trial by jury the contestants had verdict and judgment was entered thereon disallowing probate of the will. The sole ground of contest was that Minnie Paul was mentally incompetent at the time the will was made. Proponent has appealed.

(1) Burden of proof. The circuit judge charged the jury that the burden of proof was on proponent to show mental competency of the testatrix. Appellant assigns this as error. Appellees contend that under the circumstances of this case the error was not prejudicial. They point out that the circuit judge charged that the testatrix was presumed to be mentally competent, and properly instructed the jury as follows:

"If you are satisfied from a preponderance of the evidence that Minnie Paul on January 31, 1925, was mentally incompetent to make a will under the definition of what constitutes testamentary capacity, then you will find for the contestants and disallow the will."

Further in support of their contention that there should not be reversal because of the claimed erroneous instruction as to burden of proof, appellees stress the fact that notwithstanding the subscribing witnesses to the will were available as witnesses to prove the will, neither of them was produced by pro-

ponent. See 3 Comp. Laws 1929, § 15542 (Stat. Ann. § 27.2642). On this account appellees contend that 3 Comp. Laws 1929, § 14212 (Stat. Ann. § 27.907), which places the burden of proving mental incompetency on a contestant does not apply. This section of the statute as to burden of proof reads:

"In proceedings for the probate of wills, it shall not be necessary for the proponent in the first instance to introduce any proof to show the competency of the decedent to make a will, but the like presumption of mental competency shall obtain as in other cases." 3 Comp. Laws 1929, § 14212 (Stat. Ann. § 27.907).

Appellees' contention as to the statute last quoted cannot be sustained except, in effect, we add to the statute the following: "This statute shall not apply in case the proponent does not produce available subscribing witnesses to prove the will." The legislature might have added such a provision, but the court is without power to do so. We are not in accord with appellees' contention to the contrary.

As above stated, the only issue in this case was the mental competency of the testatrix. After charging the jury as hereinbefore quoted, the trial judge charged the jury twice that the burden of showing mental competency was on proponent. This was particularly emphasized by the following incident which occurred as the court was giving this portion of his charge:

"*Mr. Harward:* Didn't you mean to say the 'contestants' there instead of proponent? You said proponent.

"*Mr. Goodnow:* The burden of proof is what you are speaking of.

"*The Court:* No, I meant proponents. The burden of proof is on the proponents in this case. * * * They do not need to prove their claim beyond a rea-

sonable doubt such as is required in a criminal case, but only by a preponderance of evidence."

It is settled law in this jurisdiction that the burden of proving mental incompetency is on the one who contests a will. 3 Comp. Laws 1929, § 14212 (Stat. Ann. § 27.907). Numerous decisions of this court might be cited, but it suffices to note *In re Curtis' Estate,* 197 Mich. 473, and *In re Miller's Estate,* 277 Mich. 11. The repeated instructions to the contrary constituted reversible error. They contradicted the earlier por-. tion of the court's charge and presented to the jury a confused statement of the law as to the burden of proof on the controlling issue.

(2) Competency of testimony. Appellant asserts there was error in the court's refusal to take the case from the jury on the ground that there was no competent proof of mental incompetency. In this connection appellant also assigns error on the trial court's denial of her motion to strike from the record the testimony of two of contestant's witnesses as to mental incompetency, these witnesses being Hon. William B. Brown and Attorney Charles C. Lockwood.

The competency of the testimony of each of these two witnesses is subject to the rule applicable to any layman produced as a witness to prove mental incompetency. Before being permitted to express his opinion that the testatrix was not competent, such a witness must testify to facts or circumstances which have a logical tendency to justify his opinion as to incompetency. *In re Walter's Estate,* 215 Mich. 572; *In re Dowell's Estate,* 152 Mich. 194.

The will in suit was executed January 31, 1925. By it the testatrix disposed of a very substantial estate. In June, 1925, Judge Brown, sitting in the circuit court of Wayne county, heard and later decided an equity case in which testatrix, Mrs. Minnie

Paul, was a defendant and a cross-plaintiff. Her status in that case was that of an incompetent who appeared in the litigation as such by her guardian *ad litem*. During the course of hearing that case, about five months after the execution of Mrs. Paul's will, Judge Brown had a somewhat unusual and extended opportunity to observe Mrs. Paul's mental condition, especially while she was on the witness stand. Her mentality was in issue in that case; and on the ground of mental incompetency the court released her from certain contractual obligations which she had entered into in 1924. As a witness in the instant case Judge Brown reviewed in considerable detail the conduct of Mrs. Paul in the former suit. We quote from Judge Brown's testimony:

"She (Minnie Paul) would say, yes, in answer to a question and then kind of keep on and you might say driveling along and, kind of interrupt herself and then say no, and then say, oh, I don't know anything, don't bother me, or something like that, oh, I don't know anything, or something. That was generally the apparent situation when she tried to find out, tried to testify to any fact. * * *

"*Q.* You recall a series of questions that were asked of her which she did not reply to at all?

"*A.* Yes. * * *

"*Q.* And was it clear from your observation of her that she couldn't comprehend those agreements?

"*A.* That's the way it appeared to me. * * *

"*Q.* You say that the—strike that. The instruments that were in suit, judge, were dated in June and November of 1924, isn't that right?

"*A.* Yes.

"*Q.* Do you recall that the deceased stated that she was mentally unsound for years?

"*A.* I can't remember the length of time, but it was to the effect that she was mentally unsound and didn't know anything.

"*Q.* Do you remember that the deceased stated that she couldn't read or write English?

"*A.* Yes. * * *

"*Q.* She didn't know whether she had any money or not?

"*A.* No. * * * I watched her in court, observed her, listened to her testimony, was much impressed with the way she lived, with the injuries that she received, (in 1924) I never heard anything like it on anybody else and marveled at their having an estate of some $40,000, as I remember it—and it seemed to me that she didn't have the mental capacity to appreciate anything at all about $40,000, what it would signify to anybody, even though not associated with any natural objects of her bounty. It didn't seem to me that she had the capacity to do that, rationally to appreciate the fair value of her estate. * * * And she had no ability to harmonize it or associate it with the natural objects of her bounty and make a disposal of it. I say she was entirely without the ability to do that."

While the occasion above noted was the only one Judge Brown had to form an opinion of Mrs. Paul's mentality, still we think it and the facts to which he testified constituted a sufficient foundation to qualify him to testify, as he did, that in his opinion Mrs. Paul did not have sufficient mentality five months prior to the time her case was heard by him to enable her to make the will which is now being contested.

The other witness, Charles Lockwood, for many years has been a member of the bar of this State. He drafted Mrs. Paul's will. He interviewed her and transacted other business with her about the same time. He was her attorney in the case tried before Judge Brown; and testified to observations then made of much the same character as those covered by the testimony of Judge Brown. His cross-examination disclosed that almost simulta-

neously with the execution of the will and also again sometime later Attorney Lockwood had been a party to the consummation of transactions to which Mrs. Paul was a party and which would be void or at least voidable if in fact Mrs. Paul was then a mentally incompetent person. But these circumstances would not justify exclusion of his testimony if it was otherwise competent. They merely went to the weight of testimony given by this witness. A sufficient foundation was laid for the opinion testimony of both Judge Brown and Attorney Lockwood. The circuit judge correctly refused to strike their testimony, or to take the case from the jury on the ground that there was no competent proof of mental incapacity.

(3) Competency of exhibits. There is no merit to appellant's contention that the court erred in refusing to strike from the record contestants' exhibits 2, 3 and 8. These are, respectively: "2," the amended answer and cross bill that was filed for Minnie Paul in the suit heard by Judge Brown; "3," the petition filed in the same suit by Sadie Brow for her appointment as guardian *ad litem* of Mrs. Paul as a mentally incompetent person, and "8," Sadie Brow's consent to act as such guardian. Sadie Brow took the witness stand in the instant case as a witness in her own behalf as proponent of the will. As such proponent and principal beneficiary she was seeking to establish the validity of her mother's will over contestants' claim of invalidity because of mental incompetency of the testatrix. Each of the three exhibits was signed by Sadie Brow, two of them were sworn to by her, and each was inconsistent with her claim in the instant case. Having offered herself as a witness, the contestants were entitled to cross-examine her as to any matter germane to the issue being tried. The exhibits were properly admitted as a part of her cross-examination and the

trial judge was not in error in refusing to strike them from the record.

(4) Production of subscribing witnesses. Notwithstanding they were available, proponent did not call either of the two subscribing witnesses to testify to the execution of the will. Instead, its execution was testified to by persons other than the subscribing witnesses, such other persons having been present and having observed the execution of Mrs. Paul's will. Contestants unsuccessfully objected to proponent's refusal to produce the two subscribing witnesses. Seemingly proponent did not call the subscribing witnesses because they were hostile to her. While not essential to the disposition of this appeal, it is probable the same question will arise on retrial. The query here presented is this: Where the two subscribing witnesses to a will are within the court's jurisdiction and available as witnesses to prove the execution of the will in a contested case, is the proponent required to have them present as witnesses at the trial?

The Michigan statute, 3 Comp. Laws 1929, § 15541 *et seq.* (Stat. Ann. § 27.2641 *et seq.*), unlike statutes in some other States, does not make specific provision as to the necessity of producing subscribing witnesses in contested cases; but in our former decisions significant comments have been made on this phase of the law.

"Our statute does not in terms require all the subscribing witnesses to be sworn on a contest, except inferentially in the probate court. 2 Comp. Laws 1871, § 4339. This requirement if it exists is only implied, and we are not called on now to determine in what cases and to what extent it is imperative. The failure to produce such witnesses in the probate court or on appeal, if the witnesses were within the jurisdiction and could be reasonably produced, would

be at least a very suspicious omission, which should have its weight. But where the will has once been admitted to probate, and that order is appealed from, and both witnesses are actually produced in court and examined, the failure to ask a particular question of one witness—when the door is wide open for cross-examination—does not deprive the contestant of the means of bringing out the knowledge or ignorance of such witness, and can do no practical harm to any one." *Abbott* v. *Abbott*, 41 Mich. 540.

In a contested will case wherein proponent made a showing that one of the subscribing witnesses could not be found, Mr. Justice BROOKE said:

"It is urged on behalf of contestant that this showing was insufficient. It is claimed that 4 How. Stat. (2d Ed.) § 10992 (3 Comp. Laws 1929, § 15541; Stat. Ann. § 27.2641), compels the proponent to produce both witnesses to a will in case of a contest as to its validity. We think the statute demands no such construction. It is true that, in cases where the probate of a will is contested, the unexplained absence of one of the witnesses is regarded with suspicion; but the production of both is not mandatory. *Abbott* v. *Abbott*, 41 Mich. 540." *In re Barney's Will*, 187 Mich. 145.

In another contested will case on trial before a jury in the circuit court, proponents did not produce or take the testimony of a subscribing witness who was out of the State. In overruling contestants' objection that this constituted error it was said:

"She was out of the State. She had testified in the probate court. That testimony was offered by proponents at the trial, but, being objected to by contestants, was withdrawn. Under our holding in *Abbott* v. *Abbott*, 41 Mich. 540, 543, and it appearing by this record that no real issue was made as to the execution of the will in question, we think there was

no reversible error in the ruling upon this question.''
*In re Walsh's Estate,* 196 Mich. 42, 72 (Ann. Cas.
1918 E, 217).

In another case somewhat in this field of law and
in which the contested will was subscribed by three
witnesses we said:

"After proving the execution of the will by Mr.
Parker and Mr. Tucker, it was offered in evidence.
Objection was made to its reception, until Mr. J. C.
Lamb, the other witness, was sworn. It was then
stated by counsel that the will had been proven by
the number of witnesses required by the statute to
sign as witnesses; that they did not desire to call Mr.
Lamb then, but would call him later. The will was
then read in evidence, and this is said to be error.
Mr. Lamb was called later, and was cross-examined
at great length by counsel for contestants. The con-
testants were not obliged to make Mr. Lamb their
own witness. They had the same opportunity to
cross-examine him they would have had if he had
been called earlier. They and the court were told
before the will was read that Mr. Lamb would be
called later. We do not see how the contestants were
prejudiced, and think that the case comes within the
ruling of *Abbott* v. *Abbott,* 41 Mich. 540, 543; *Fraser*
v. *Jennison,* 42 Mich. 206." *Lamb* v. *Lippincott,* 115
Mich. 611.

We think the statement in the *Barney Case, supra,*
"but the production of both (witnesses) is not man-
datory. *Abbott* v. *Abbott,* 41 Mich. 540," must be
read in the light of the fact that in the *Barney Case*
and in the cited case only one of the two subscribing
witnesses was available. In such a case practical
necessity compels the holding that "the production
of both is not mandatory."

Notwithstanding the absence of express require-
ment, it seems rather incredible that two subscribing

witnesses should have been made requisite to a valid will unless it was contemplated that in event of its validity being challenged both of such witnesses, if available, should be produced by proponent. And it is somewhat persuasive to the same end that our statute (3 Comp. Laws 1929, § 15541 [Stat. Ann. § 27.2641]) provides in case of no contest the testimony of *one* subscribing witness may be accepted by the court as being sufficient to establish the will. From this provision it is almost a necessary inference that in the event of a contest it is contemplated both subscribing witnesses, if available, will be produced by the one asserting the validity of the will.

"While, under the wording of, and construction placed on, the statutes in a majority of jurisdictions, it is necessary to produce and examine the full number of witnesses required by law to attest a will if they are alive, sane, and within the jurisdiction of the court, at least where the will is contested, and a like rule obtains in a suit in equity to establish a will, it is not essential that due execution of the will be proved or established by the testimony of all or any of the subscribing witnesses so produced and examined. Execution may be sufficiently proved where one witness testifies positively to the requisites of execution and another does not recollect or denies some of the requisites." 68 C. J. p. 1021.

In support of the above-quoted statement that it is necessary to produce the full number of witnesses required by law, if they are available, a large number of adjudicated cases are cited. Both because we think it is the better practice and because under our statute it is an implied requisite, it is our conclusion that in event due execution of a will is contested, the proponent should produce in court for examination at least two subscribing witnesses, if they are within the court's jurisdiction and competent to testify.

Other questions considered in the briefs, including proponent's claimed waiver by contestants of the failure to produce the subscribing witnesses, are of such a character that they are not likely to arise on retrial and therefore are not viewed herein. For the reason first above noted, judgment is reversed and a new trial ordered. Costs of this court to appellant.

BUTZEL, C. J., and WIEST, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.