MARY KELLER, Respondent, v. PETER REICHERT, Mrs. James J. Ryan, Mrs. Sidney Mitchell, Mrs. Alvin Enders, Mrs. Leslie D. Colton, Rev. J. J. Raith, Appellants.

(189 N. W. 690.)

**Witnesses — law excluding testimony of transactions with deceased not applicable in proof of wills.**

1. Section 7871, Comp. Laws, 1913, which provides that in a "civil action or

Note.—In construing statutes in effect disqualifying at a witness in his own behalf one of the parties to a transaction when the other party thereto has deceased, the courts seem to be largely influenced by the general purpose of the statute to protect estates of decedents. Accordingly these statutes are frequently held to be applicable only when the witness is interested in establishing a claim against or defeating a claim of an estate, and proceedings among the heirs or legatees affecting the distribution of the estate including the probate of a will offered as that of the deceased, are held not to be within the purview of these statutes, as will be seen by an examination of the cases in a note in 51 L.R.A. (N.S.) 188.

On effect of statute prohibiting a party from testifying in his own behalf where opposite party is dead, see note in 56 Am. Rep. 527.

See also 28 R. C. L. 510, et seq.; 5 R. C. L. Supp. 1542; 28 R. C. L. 405; 4 R. C. L. Supp. 1823; 5 R. C. L. Supp. 1535.

proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them, neither party shall be allowed to testify as to any transaction whatever with or statement with or statement by the testator or intestate, unless called to testify thereto by the opposite party," is not applicable in proceedings for the probate or contest of a will.

**Wills — law, forbidding witness to take under will unless two other competent witnesses, applies only to witnesses.**

2. Section 5680, Comp. Laws 1913, which provides that "all beneficial devices, legacies, or gifts whatever made or given in any will to a subscribing witness thereto are void unless there are two other competent subscribing witnesses to the same," applies only to subscribing witnesses to the will.

**Wills — testamentary capacity, fraud, and undue influence held for jury.**

3. For reasons stated in the opinion it is held that questions of fraud and undue influence were for the jury.

Opinion filed July 12, 1922. Rehearing denied September 9, 1922.

Wills, 40, Cyc. p. 1062 n. 34 New; p. 1331 n. 42; p. 1332 n. 46; Witnesses, 40 Cyc. p. 2266.

From a judgment of the District Court of Ward County, *Moellring,* J., defendants appeal.

Affirmed.

*Messrs. Fisk, Murphy & Nash,* for appellants.

In Starkweather v. Bell, 12 S. D. 146, this statute is construed. The facts are substantially the same as in the case at bar. Judge Corson, speaking for the South Dakota court holds directly against the respondent in this case.

The following cases support the construction placed upon this statute by the South Dakota court. Bardell v. Brady, 172 Ill. 420, 50 N. E. 124; Waugh v. Moan, 20 Ill. 298, 65 N. E. 713; Smith v. James, 72 Ia. 515, 34 N. W. 309; Blake v. Rourke, 74 Iowa, 519, 38 N. W. 392; Goldthorp's Estate, 94 Iowa, 336, 62 N. W. 845, 58 Am. St. Rep. 400; Ross v. Ross, 140 Iowa, 51, 117 N. W. 1105; Rich v. Bowker, 25 Kan. 7; Tucker v. Whitehead, 59 Miss. 594; Whitehead v. Kirk (Miss.) 61 So. 737; Lewis v. Aylott, 45 Tex. 190; Watts v. Rolland, 56 Tex. 54.

Declarations of a beneficiary under the will, though made in the presence of the testator and after the execution of the will have been held to be inadmissible to show that she did not exert undue influence

over the testator.     Roberts v. Trawick, 22 Ala. 490; McQueen v. Wilson, 131 Ala. 606, 31 So. 94; St. Leger's Appeal, 34 Conn. 450, 91 Am. Dec. 735.

It becomes, then, upon proof that the will was written or procured to be written by a beneficiary, the duty of the proponent, in order to uphold the will, to produce evidence to remove the suspicion.    Billinghurst v. Vickers, 1 Phill. Ecc. (Eng.) 187; Adams v. McBeath, 3 British Columbia 513, affirmed in 27 Can. Sup. Ct. 13; Dudley v. Gates, 124 Mich. 446, 86 N. W. 959, 8 Detroit Leg. N. 415, 83 N. W. 97; Miller v. Livingstone, 31 Utah, 428, 88 Pac. 338.

Or to rebut the presumption said by many courts to be engendered by this circumstance in connection with the fact that the draftsman was a confidential agent of the testator.     Lyons v. Campbell, 88 Ala. 470, 7 So. 250; Coghill v. Kennedy, 119 Ala. 658, 24 So. 459; Bancroft v. Otis, 91 Ala. 291, 8 So. 286, 24 Am. St. Rep. 904; McQueen v. Wilson, 131 Ala. 606, 31 So. 94; In re Cooper (N. J.) 71 Atl. 678; Yorke's Estate, 6 Pa. Dist. Ct. 326.

"Subscription by a witness to a will, made before a testator who is unconscious of the act performed before him, cannot be said to have been made 'in the presence of the devisor,' as that phrase is used in the statute."    Right v. Price, 1 Dougl. 241.

The presence contemplated by the statute is not simply the bodily presence of the testator; it is essential that the testator be mentally capable of recognizing and actually conscious of the act performed by him.    If this power be wanting, mere corporeal presence will not suffice.    Watson v. Pipes, 32 Miss. 451; Violette v. Therriau, 17 N. B. 389; Hill v. Barge, 12 Ala. 687; Hall v. Hall, 18 Ga. 40; Orndorff v. Hummer, 12 B. Mon. (Ky.) 619; Jackson v. Moore, 14 La. Ann. 209; Etchison v. Etchison, 53 Md. 348; Aikin v. Weekerly, 19 Mich. 482; Spoonemore v. Cables, 66 Mo. 579; Vernam v. Spencer, 3 Bradf. (N. Y.) 16; Aurand v. Wilt, 9 Pa. 54; Baldwin v. Baldwin, 81 Va. 405; Chappell v. Trent, 90 Va. 849, 19 S. E. 314; Muerer's Will, 44 Wis. 392.

*McGee & Goss,* for respondents.

"Cases may be found where less mental capacity is needed intelligently to give effect to a purpose already formed as to the final disposition of an estate than would be necessary for ordinary business."

Hutchinson v. Hutchinson (Ill.) 38 N. E. 926. And in this note to 27 L.R.A.(N.S.) page 98, under the above heading, the author cites and quotes from the above cases cited in 2 B. R. C. 41, and note, viz: McMasters v. Blair, 29 Pa. 298; O'Brien v. Dwyer, 17 Atl. 777; Hathorn v. King, 5 Am. Dec. 106; Clifton v. Clifton, 21 Atl. 333; Re Wilde, 77 N. Y. Supp. 164; Stevenson v. Stevenson, 33 Pa. 471, and the English cases cited above of Parker v. Delgate, L. R. 8 Prob. Div. 171, and Perera v. Perera, A. C. 354.

And in the syllabus to the case annotated, Slaughter v. Heath (Ga.) 27 L.R.A.(N.S.) page 1, the syllabus reads: "A person has testamentary capacity who understands the nature of a testament or will, viz., that it is a disposition of property to take effect after death and who is capable of remembering generally the property subject to disposition and the person related to him by the ties of blood, and of affection, and also of conceiving and expressing by words, written or spoken, or by signs, or by both any intelligible scheme of disposition. If the testator has sufficient intellect to enable him to have a decided and rational desire as to the disposition of his property, this will suffice."

See L.R.A.1915A, 452, subd. D. 5, that: "The facts that the testator, at the time of making his will, was eighty-two years old, was in his last illness, was partially paralyzed, and extremely weak, and at times flighty, and died on the morning following the execution of the will, which occurred at 2 o'clock in the afternoon, do not necessarily show testamentary incapacity." Lindsey v. Stephens, 229 Mo. 600, 129 S. W. 641.

And the principal case annotated—that of Re MacCrellish, 167 Cal. 711, 141 Pac. 257, L.R.A. 1915A, 443, from the syllabus we quote: "That one is occasionally in a sort of stupor, forgets what she is talking about, denies ownership of property when what she possesses is disappointing and not very remunerative, and that she has hallucinations that men are hiding near her, spying on her, and wishing to rob her, do not show absence of testamentary capacity."

CHRISTIANSON, J. This is an appeal from a judgment of the district court of Ward county admitting a will to probate. The facts necessary to a proper understanding of the questions presented on the

appeal will be briefly stated: On February 24th, 1920, one Joseph Reichert died at St. Joseph's Hospital in the city of Minot, in this state, leaving certain real and personal property. He also left two wills, one signed on February 23rd, 1920, and the other on February 24th, 1920. The will admitted to probate by the judgment appealed from is the second will. The deceased was an unmarried man and left surviving him a brother and four sisters. The respondent in this case claims and the evidence adduced by her upon the trial is to the effect that she and the deceased were engaged to be married and that the date of the marriage had been fixed for some time in April, 1920. Under the first will Reichert left $100 to his priest for masses for his soul; $500 to St. Leo's Church; $500 for the education of worthy catholics to the priesthood and $200 to the respondent, Mary Keller; the remainder of his property to be divided, equally among his brother and sisters. Under the second will he left $100 to his priest for masses for his soul and left all of his real property to the respondent, Mary Keller. No provision was made for the distribution of the personal property, hence the same, according to the law of succession of this state, would be distributed among the brother and sisters.

There is no question that Joseph Reichert was a very sick man both at the time he executed the first and the second will. He had received the last sacrament before he executed the first will. After he had made the first will he asked one of his attending physicians to write the respondent, and in compliance with this request, the physician, on February 23d, 1920, wrote her as follows: "Minot, N. D. Feb. 23, 1920. Miss Keller: Joe Reichert is very sick with pneumonia and he wants you to come on first train. He is in St. Joseph's hospital in Minot, (signed) Dr. A. Carr."

Thereafter on February 24th, 1920, at his request the following telegram was sent to her: "Joseph Reichert seriously ill at St. Joseph's hospital, Come at once. St. Joseph's Hospital."

She received both the telegram and the letter on the morning of February 24th, 1920, and took the first train to Minot. The train was late and she did not arrive until about 4 o'clock in the afternoon. She at once went to Reichert's room in the hospital. He informed her that he had made a will, and according to her testimony, stated that he wanted to change the will which he had made, and she, in accordance

with his request, went down town and had the second will prepared. The second will was prepared by the same attorney who prepared the first one. The execution of the second will is attested by the two attending physicians. There is square conflict in the evidence both as to the mental condition of the testator and the conditions surrounding the execution of the second will. There is no question, however, but that the signature attached to the will was written by the testator. The serious questions in this case are whether the will was executed as the result of fraud or undue influence practised or exercised by Mary Keller; and whether at the time he signed the will the testator had mental capacity to do so. These questions involve a consideration of the competency and probative force of the testimony of the respondent, Mary Keller. If her testimony was competent, and if the facts are as she purported to detail them, then the will in controversy here is valid, and the judgment appealed from here the correct one. It is contended, however, that her testimony was inadmissible under § 7871, Comp. Laws, 1913, which prohibits a party "in any civil action or proceeding by or against executors, administrators, heirs at law or next of kin in which judgment may be rendered for or against them from testifying as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party."

It is further contended that the testimony of the respondent was incompetent under § 5680, Comp. Laws, 1913, which provides that "all beneficial devices, legacies, or gifts whatever made or given in any will to a subscribing witness thereto are void unless there are two other competent subscribing witnesses to the same." It is further contended that the respondent failed to sustain the burden of proof; that this court should say as a matter of law that the testator was without mental capacity to make a will, and that there was no legal publication of the will. These propositions will be considered in the order stated.

The first question presented for determination is whether § 7871, Comp. Laws, 1913, inhibited the respondent Mary Keller, from testifying with respect to the preparation, signing and publication of the will in question. That section so far as material here reads as follows: "No person offered as a witness in any action or proceeding in

any court, or before any officer or person having authority to examine witnesses or hear evidence, shall be excluded or excused by reason of such person's interest in the event of the action or proceeding; or because such person is a party thereto, or because such person is the husband or wife of a party thereto, or of any person in whose behalf such action or proceeding is commenced, prosecuted, opposed, or defended, except as hereinafter provided. . . . 2. In any civil action or proceeding by or against executors, administrators, heirs at law or next of kin in which judgment may be rendered or ordered entered for or against them, neither party shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party; and where a corporation is a party in proceedings mentioned in this section, no agent, stockholder, officer, or manager of such corporation shall be permitted to testify to any transaction had with the testator or intestate."

After a careful consideration of this question, we are of the opinion that this statute did not render Miss Keller's testimony inadmissible. The general policy of the statute is to make all persons competent witnesses in all actions and proceedings in any of the courts of this state. There are certain exceptions to this general policy which are enumerated in the statute. The only way in which we can ascertain the scope of the exceptions is to look beyond such language, and enlarge the exception which the lawmakers have prescribed, St. John v. Lofland, 5 N. D. 140, 143, 64 N. W. 930. The statute by its express terms applies only to a "civil action or proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered for or against them." Mowry v. Gold Stabeck Co. 48 N. D. 764, 186 N. W. 865. The probate of a will clearly does not come within the terms of the statute. That is not a claim or demand which arose out of any transaction with the testator during his lifetime, existing at his death, and which might be enforced against him if living, and which his executors, administrators, heirs at law, or next of kin are compelled to prosecute or defend in his place. That is a judicial inquiry whether the instrument before the court is the last will and testament of the deceased, and en-

titled to be admitted to probate as such. 40 Cyc. 2266; 28 R. C. L. p. 510; Re Veasey, Ann. Cas. 1914A, 982, note.

Much of what has been said with respect to § 7871, supra, is also applicable to § 5680, Comp. Laws, 1913. That section by its terms applies only to "a subscribing witness" to the will. The respondent, Mary Keller, was not a subscribing witness. Hence, the section does not apply. Sellards v. Kirby, 82 Kan. 291, 28 L.R.A.(N.S.) 270, 136 Am. St. Rep. 110, 108 Pac. 73, 20 Ann. Cas. 214. See also Mackin v. Mackin, 37 N. J. Eq. 528.

There is some conflict in the authorities as to the force of the implication resulting from the fact that one who is a beneficiary under the will is active in procuring the execution thereof. The various authorities dealing with this question are collated in a note appended to Kirby v. Sellards, 28 L.R.A.(N.S.) 270. See also 28 R. C. L. 144. It is unnecessary to determine which line of authorities should be followed in this state, for the court in its instructions herein in effect stated that Mary Keller had the burden of proving that the will was not executed by the testator as a result of fraud or undue influence on her part. Hence, the instructions given were as favorable to the appellants as they were entitled to under any of the legal theories applicable where the beneficiary under a will is also active in the preparation thereof. The jury guided by these instructions, in answer to specific questions, said that no fraud or undue influence had been exercised. They, also, said that the will was prepared in accordance with instructions given by the testator on the afternoon of February 24th, 1920; that at the time he gave such instructions he fully understood what he was doing and knew what property he possessed and to whom he desired to leave it under his will; that he knew and understood the nature of the business in which he was engaged; that the will in suit was prepared in accordance with and pursuant to the instructions he so gave; that it was read over, and the contents thereof fully explained, to him an hour before he signed it; that at the time he signed it or immediately prior thereto or thereafter he declared to the two attesting witnesses that it was his last will and testament, and he signed the same in the presence of such two subscribing witnesses, and that they thereupon in his presence and in the presence of each other signed their names thereto as subscribing witnesses.

49 N. D.—6.

Under our law the parties, having demanded a trial by jury, were entitled to have the questions of fact in the case submitted to and determined by a jury. Comp. Laws, 1913, § 8620. This, of course, included the questions of credibility of witnesses and weight of their testimony; and the court is not at liberty to review or revise the action of the jury, unless the verdict is without substantial support in the evidence. And in our opinion it cannot be said that these findings of the jury are without substantial support in the evidence. There is nothing to indicate that the disposition of the testator's property as made by the will was an unnatural one. The evidence clearly shows that Miss Keller was the one person that was uppermost in his mind. Reference has already been made to the letter which he caused his physician to write and the telegram which he caused the hospital to send her. The undisputed evidence further shows that on February 24th, 1920, he wrote here a letter which, according to the postoffice mark was mailed at Minot, N. D., at 2:30 o'clock P. M., on February 24th, 1920. The letter is in his own handwriting and reads as follows:

"Minot, N. D. Feb. 24, 1920. My dear Mary: Will write you a line to let you know that I am considered to be quite low. I got a private room now. Well, Mary, I wish you could come up and spend a few days. I have got all the sacraments. Well must close. Your true love. Joseph Reichert. Room 1 on 2 Floor."

The evidence further shows that during the night preceding the execution of the will, that is during the night intervening February 23d and February 24th, 1920, he caused his nurse to telephone the various hotels to ascertain if Mary Keller had arrived. And the Mother Superior, whose testimony otherwise was not favorable to Mary Keller, stated that when she was in Reichert's room on February 24th, 1920, he told her that he was waiting for Miss Keller and expected her to arrive. The evidence further shows that at the time he executed the first will he stated to the attorney who prepared it that he might want to change the will and that he particularly indicated that he might want to eliminate one of the sisters entirely as she had not written to him for a long time. The evidence shows that after Miss Keller arrived he suggested to her that they get married at once and that this plan was abandoned because it was found that

the priest was out of the city; that he informed her of the will which he had made the day before; that she obtained this will and that they went over and discussed the provisions thereof; that he expressed a desire to make a new will and directed her to go to see the attorney who had prepared the first will and have him prepare a new will making such disposition of the property as is made in the will in suit. In addition to these serious matters, they talked about many other things; he asked her how the wrist watch, which she was then wearing which he had sent her as a Christmas present the preceding Christmas was keeping time; he told her about having accompanied her father to a local eye specialist a short time before, and described the condition of her father's eye; he referred to certain horses belonging to her father, and stated that he expected to buy one of these horses in the spring. The attending nurse testified that after the will was signed and as she was picking up Miss Keller's hat which was lying on a chair in the room, Reichert called her attention to the fact that the hat belonged to Miss Keller by saying "That is Mary's hat." So far as the publication of the will is concerned, there is, in our opinion, no reason whatever to justify this court in saying, as a matter of law, that the will was not published. The two physicians who signed the will as subscribing witnesses, both testified they so signed it in the presence of the testator and in the presence of each other. They also testified that the testator signed it in their presence. The attestation clause is in due form and reads as follows:

"This instrument was on the day of the date thereof, signed, published and declared by said testator Joseph H. Reichert to be his last will and testament in our presence, who at his request have subscribed our names thereto as witnesses in his presence and in the presence of each other. A. Carr, of Minot, N. D. Frank E. Wheelon, of Minot, N. D."

In short there is no dispute in the evidence but that the testator signed the will himself, holding the pen in his own hand, without any assistance except on the part of the nurse who held a magazine or some other hard substance under the document when he signed it. According to the testimony of Mary Keller, there was a specific declaration by the testator that this was his last will and testament and a request by him that the two physicians sign the same as subscribing

witnesses. This testimony, of course, is strictly in accord with the attestation clause to which the physicians affixed their signatures; and when the testimony is considered as a whole, we are of the opinion that the questions of mental capacity, fraud and undue influence were all questions of fact for the jury, and that the findings of the jury on these questions are binding upon this court. What has been said disposes of all the controlling questions presented on this appeal and it follows that the judgment appealed from must be affirmed and it is so ordered.


BIRDELL, Ch. J., *concurs.*


ROBINSON, J. (concurring specially). On February 24, 1920, at the Catholic Hospital, in Minot, Joseph Reichert, aged thirty-three, died of pneumonia. He left land worth $15,000, personal property, $6,000. For two years prior to his decease he was engaged to Mary Keller. He loved her very sincerely and regarded her as his wife. Yet, on February 23, he made a will leaving Mary Keller, $200, to the church, $1,100, to his four married sisters, the rest of his property, $20,000. Then, next day, February 24, he made a second will leaving to Mary Keller all the land, $15,000, to his four sisters, the personal property, $6,000, to his priest, $100. The last will is contested on the ground of undue influence and lack of mental capacity. On the trial in the district court of Ward county the jury found a verdict in favor of Mary Keller. Judgment was duly entered and contestants appeal. It is certain the verdict is well sustained by the evidence. It is certain the first will was made under undue influence, and that after making it Joseph Reichert had no peace of mind until he met his affianced and made the will in her favor and received her last kiss of love. Then he was happy, as he gave up the struggle for life and expired in a few minutes. After making the first will he at once caused Dr. Carr to write for Mary, who was at Carrington, North Dakota. Then he sent her a telegram to come at once, and with the greatest impatience he watched and waited for her coming during the long night of February 23 and 24, and in the night sent his nurse

around the city to inquire for her at every hotel. But the Soo train was late and did not arrive until near 4 P. M. of the 24th, when Mary rushed to his room. He at once told her of the will that he had made, requested her to get it from the Mother Superior and read it, then to go to his attorney and have him draft a will leaving her all the land. She went to the attorney, stated the wish of the deceased. He drafted the will, brought it to the sick man, read it to him and said that it should be signed in the presence of two witnesses. After a time his two doctors arrived and in their presence he sat up in bed, reclining on pillows, signed the will, and in his presence they signed the attestation thus:

"This instrument was on the day of the date thereof, signed, published and declared by said testator Joseph H. Reichert to be his last will and testament in our presence, who at his request have subscribed our names thereto as witnesses in his presence and in the presence of each other.

A. Carr, of Minot, N. D.

Frank E. Wheelon of Minot, N. D."

The attestation is short and regular and it is signed by intelligent professional gentlemen. It is fair to assume that they did not subscribe to a false statement. The will is very brief. It is in all respects duly executed. It was drafted in accordance with the directions of the testator by his lawyer, who read the will to him and left it with him two hours before his decease. The testator read the will himself and put it under his pillow. Though his mind was failing, his every thought was on his Mary and on the will. Well might he have said to her:

"One feeling alone to my bosom was true;

Need I say dearest Mary 'twas centered on you."

Here is a copy of his last letter, mailed at Minot, February 24, at 2:30 P. M., as shown by the clear stamp of the postoffice. It is in his own handwriting:

"Minot, N. D., Feb. 24, 1920.

My dear Mary:

Will write you a line to let you know that I am considered to be quite low. I got a private room now. Well, Mary, I wish you could

come up and spend a few days. I have got all the sacraments. Well must close.

Your true lover,

Joseph Reichert.

Room 1 on 2 Floor."

While the will in question was executed somewhat in extremis, it was read to him and by him and approved in strength and when he clearly understood it. And he did understand it at the time of signing. The jury found specifically that the will was prepared in accordance with instructions given by Joseph Reichert when he fully understood what property he possessed and to whom he desired to leave it. Certain it is there was no complication. The matter was entirely simple. There was no deception nor undue influence. Aside from the very convincing testimony of Mary, the circumstantial and other evidence do show a valid execution of the will.

Objection was made to her testimony as incompetent under this statute:

Section 7871, Comp. Laws, "In civil actions or proceedings by or against executors, administrators, heirs at law or next of kin in which judgment may be rendered or ordered entered for or against them, neither party shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate unless called to testify thereto by the opposite party, etc. . . ."

Such a disqualifying statute should be given a literal and strict construction. This is an action to prove a will. It is not an action against any person. It is in the nature of an action in rem. 40 Cyc. 2266, with citations from twenty states; 28 R. C. L. 510. The minority rule to the contrary shows the natural tendency of some courts to adhere to old rules and disqualifications, even though the effect be to suppress the truth and to do a great injustice. This case shows the superior wisdom and justice of the majority rule, because the circumstantial and the direct evidence submitted shows beyond doubt that the judgment is correct and right.

BRONSON, J. (dissenting). The majority opinion finds the testimony of the legatee, Mary Keller, covering conversations with the deceased, admissible; that a proceeding contesting the probate of a will

does not fall within the prohibitory terms of § 7871, Comp. Laws, 1913. With this view, I cannot agree. The express terms of the statute must be considered in connection with the cognate law and the legislative policy involved therein ever since statehood. The statute existed in territorial days. Terr. Code Civ. Proc. 1877, § 446. It has not been changed except by a restrictive provision concerning officers of a corporation. Chap. 119, Laws of 1907, and another provision permitting a surviving husband or wife, in certain cases, to testify. Laws of 1909, chap. 109. This court, in numerous cases since statehood, has stated that the general purpose of the statute involved is to prevent any party from securing an undue advantage in establishing by his testimony what transaction or conversation took place when the lips of the other party are sealed by death. Drucy v. Baldwin, 41 N. D. 473, 479, 172 N. W. 663, 182 N. W. 700, Williams v. Clark, 42 N. D. 107, 172 N. W. 827 and cases there cited. This court has also held that the statute does not apply where none of the parties, as such, appear in the relationship stated in the statute. In other words, the estate of the deceased must be concerned and the parties affected by reason of their relationship thereto. Mowry v. Gold Stabeck Co. 48 N. D. 764, 186 N. W. 866; Clarke v. Ross, — Iowa, —, 60 N. W. 629; St. John v. Lofland, 5 N. D. 140, 64 N. W. 930; Lake Grocery Co. v. Chiostri, 34 N. D. 386, 400, 158 N. W. 998.

In the pending matter, the estate of the deceased is directly involved. The relationship stated in the statute is affected. The parties are parties only by reason of such relationship.

The statute states "in civil action or proceeding by or against executors, administrators, heirs at law or next of kin in which judgment may be rendered or ordered entered for or against them." In the original act the statute read in the plural, namely, "in civil actions or proceedings" etc. The contest concerning the probate of a will is a special proceeding. It is so designated by statute. Comp. Laws, 1913, § 8634; Rev. Code 1895, § 6289, art. 2. In the county court the contestant is termed the plaintiff and the contestee, the heirs at law or next of kin, the defendants. The contest is tried like an action. Findings are made and a judgment rendered. Comp. Laws 1913, § 8579. The proceeding falls within the statutory classification of remedies either as actions or as special proceedings. Comp. Laws,

1913, § 7329. The right of appeal is provided for. Comp. Laws, 1913, § 8599. In the district court it is tried before the jury the same as any civil action. Comp. Laws, 1913, § 8620. It is a proceeding in which a judgment may be rendered or ordered against the heirs. It was so ordered against the heirs in this action. The majority opinion states that the probating of a will is a judicial inquiry as to whether it is entitled to be admitted as such. This is granted. And, further, the statute provides a method for conducting this inquiry the same as any civil action or proceeding, for it is a civil action or proceeding. Further, the question presented, in my opinion, is not one of principle concerning which there is a diversity of judicial opinion. See Re Veazey, 80 N. J. Eq. 466, 85 Atl. 176, Ann. Cas. 1914A, 982. Rather is the question one of statutory interpretation and direction. If the question were one of principle, it would appear that the statute, should apply equally as well to the pending matter, which may operate to divest the heirs of the decedent's property, as to the question of the delivery of a deed by a deceased through the determination of which the heirs or legatees are divested of the decedent's property. Druey v. Baldwin, 41 N. D. 473, 172 N. W. 663. Accordingly, in my opinion, the construction adopted by the majority opinion simply serves to engraft, by judicial legislation, an exception to the statute. The judgment should be reversed and a new trial granted.

GRACE, J., concurs.

On petition for rehearing.

CHRISTIANSON, J. Appellants have petitioned for a rehearing. They contend: (1) that the testimony of Mary Keller was inadmissible under subdivision 2 of § 7871, Comp. Laws, 1913, and that this court erred in its former opinion in holding to the contrary; and (2) that the testimony of Mary Keller is untrue, should be so considered by this court, and the verdict returned in this case set aside on the ground that it is unsupported by the evidence. We will consider these propositions in the order stated.

1. We have again considered the statute and are entirely satisfied that the construction placed thereon in the former opinion to the effect

that it does not apply in a proceeding for the probate or contest of a will is correct. As pointed out by this court in St. John v. Lofland, 5 N. D. 140–143, 64 N. W. 930, the general policy of § 7871, supra, is to make all persons competent witnesses in all actions and proceedings in any of the courts of this state. The proviso under considera- tion here made certain exceptions to this general policy. The purpose of the proviso was to guard against the temptation to give false tes- timony in regard to a transaction in question on the part of a surviv- ing party, and, further, to put the two parties to the action or proceed- ing upon terms of equality as regards the opportunity of giving tes- timony. 4 Blue Book of Evidence, p. 628. While the statutes in the different states dealing with this subject are quite variant, Michigan has a statute which so far as concerns the particular question under consideration here is quite similar to our own. The Michigan statute (How. Anno. Stat. § 7545) provided "that when a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify as to matters which if true must be equally within the knowl- edge of such deceased person." The supreme court of Michigan has repeatedly held that this statute does not apply to proceedings to pro- bate or contest a will. See Brown v. Bell, 58 Mich. 58, 24 N. W. 824; Schofield v. Walker, 58 Mich. 96, 24 N. W. 624; Re Lauten- schlager, 80 Mich. 285, 45 N. W. 147; McHugh v. Fitzgerald, 103 Mich. 21, 61 N. W. 354; Re Lambie, 97 Mich. 49, 56 N. W. 223. In construing this statute in an action contesting a will, Brown v. Bell, supra, the court said:

"We do not think the statute quoted applies to this case. The con- test is not between the estate, or the representative of the estate, and the proponent. . . . The application for the probate of this will is made neither by an executor named in the will, nor by any one acting as the legal representative of the estate of the deceased. This contest is between two persons who claim an interest in the estate, and, as to the estate proper, are third persons, and represent no one but them- selves. In that regard they stand in no different situation from what they would had a creditor made application for the probate of the will. The only questions involved in this application are: Did the

deceased in his lifetime make this will, and was he of sound mind and memory at the time? The disposition made of the property therein is of no consequence except as it may throw some light upon the fact whether he was of sound mind when he made it. The will does not in- .crease or decrease the estate. The object of this statute is to prevent fraud and false swearing whereby estates became unjustly depleted in cases where no person on the part of the estate, except the deceased, has any knowledge of the facts necessary to sustain the claim in favor of the estate, or to make good the defense of the estate, when unjust claims are attempted to be enforced against it, and we see no occasion for extending the scope of the statute by judicial construction. It is limited in its reason and spirit by fair construction to contests on litigation upon claims between other persons and the deceased, existing prior to his death; to such suits and proceedings as the deceased would have been, if living, a necessary party, and since which his heirs, dev- isees, and legatees, personal representatives, or assigns, are compelled to prosecute or defend for him in his place;" Brown v. Bell, supra. This opinion was concurred in by all of the then judges of the Mich- igan court including the celebrated jurist Judge Cooley. And the principle therein announced was reaffirmed in the subsequent decision cited above.

The Michigan case was followed and approved by the supreme court of Nebraska in McCoy v. Conrad, 64 Neb. 150, 89 N. W. 665. See also Williams v. Miles, 68 Neb. 463, 62 L.R.A. 383, 110 Am. St. Rep. 431, 94 N. W. 705, 96 N. W. 151, 4 Ann. Cas. 306.

Arkansas has a statute, in all matters material here, identical with our own. The Arkansas statute, Kirby's Digest, § 3093, provides that "in actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify by the opposite party." In construing this statute the Arkansas su- preme court said: "This statute has no application in a case in- volving a contest over the probate of a will. It was intended to pro- tect the estates of deceased persons from the attacks of persons who had, or claimed to have had, business transactions with the deceased prior to his death, and who are seeking to establish claims against his

estate. This is clearly shown by the language which declares that it is in actions where judgments may be rendered for or against the executors, administrators, etc. In other words, where a party seeks to obtain a judgment against the representatives of the estate of the deceased, and thus to impair or reduce the estate, the statute applies. But it cannot apply to controversies between devisees among themselves over a will, or between devisees or legatees and the heirs, as to the distribution of the estate by will or otherwise; for in such case the corpus of the estate is in no manner affected. There can in such cases be no judgment rendered for or against the administrator or executor as such by which the estate is impaired or reduced." Taylor v. McClintock, 87 Ark. 243, 286, 112 S. W. 416.

The supreme court of Utah originally held the statute of that state applicable to a will contest. Re Atwood, 14 Utah, 1, 60 Am. St. Rep. 878, 45 Pac. 1036. Subsequently the Utah court overruled the decision in the Atwood's Case, and held the statute inapplicable to a will contest. Re Miller, 31 Utah, 415, 88 Pac. 338. In the last cited case the Utah court said:

"The statute in this regard is intended to protect the estates of deceased persons from assaults, 'and relates to proceedings wherein the decision sought by the party so testifying would tend to reduce or impair the estate, and does not relate to the relative rights of the heirs or devisees as to the distribution of an estate in a proceeding by which the estate itself is in no event to be reduced or impaired.' Citation of Cases. These authorities, and others which can be cited, hold that the controversy such as here is between living parties, who, on the one side, are the devisees or legatees under the will, and on the other, the heirs at law of the testator. The former claim to take the estate under the will, the latter, under the statute regulating the descent of estates, insisting that the alleged will is a nullity. The act of the testator in making the alleged will is the only subject-matter of the investigation. The estate of the testator is not interested. The interests of these claiming to succeed to it either by operation of law or by operation of the will are alone involved. The estate remains intact and undiminished whatever may be the result of the controversy, and the subject-matter of the investigation is not a transaction with nor a statement by the decedent. As to such an investigation, the parties to

the suit and those interested in the result thereof are upon terms of equality in regard to the opportunity of given testimony. Our conclusion, therefore, is that all the parties interested are competent to testify to any fact which is relevant and material to the issue involved, and that the court erred in excluding the proffered testimony. We are aware of some cases which hold contrary to this ruling, and that the conclusion reached by us is in conflict with the case of Re Atwood, supra, where the statute was given application in the contest of a will. But the question as to its application in such a case was not there discussed nor considered. The only question considered was whether the witnesses claimed to be disqualified were such persons as are named in the statute. However, the Atwood Case, so far as in conflict with the holding in this case, is overruled."

The language and reasoning of the Michigan, Arkansas, and Utah courts are, in our opinion, applicable to our statute. See also Re Anderson, 114 Wash. 591, 195 Pac. 994; State v. Nieuwenhuis, 43 S. D. 198, 178 N. W. 976; Lamb v. Lamb, 105 Ind. 456, 5 N. E. 171.

2. So far as the sufficiency of the evidence is concerned, little or nothing can be added to what was said in the former opinion. Upon this proposition there has been no difference of opinion among the members of this court. The difference of opinion has been and is solely as to the admissibility of the testimony of Mary Keller. Upon that question the views expressed by the different members in the former opinions remain unchanged. The members of the court who signed the majority opinion herein adhere to all the views therein expressed.

Rehearing denied.

BIRDZELL, Ch. J., and ROBINSON, J., concur.