219 N.W.2d 815 (1974)
In the Matter of the ESTATE of Edward M. BLANK, Deceased.
Viola M. WOLFGRAM, Petitioner and Appellee,
v.
Julia L. BLANK et al., Respondents and Appellants.
Civ. No. 8969.
Supreme Court of North Dakota.
June 27, 1974.
*816 Foughty, Christianson & Thompson, Devils Lake, for petitioner and appellee.
Duffy & Haugland, Devils Lake, for respondents and appellants.
A. C. BAKKEN, District Judge.
This is an appeal from an order of the district court of Ramsey County, Second Judicial District, the Honorable James H. O'Keefe presiding. The district court by order dated July 24, 1973, reversed an order of the county court dated September 15, 1972, the Honorable Ted Weisenburger presiding, which ordered that Mary Lou Kosloski, Dorothy Edin, and Audrey Kronnenberg, daughters of Edward M. Blank, deceased, be named as his heirs at law and that one-half of the estate of the deceased be set aside for the daughters, each to receive an undivided one-third interest.
This case arose out of the last will and testament of Edward M. Blank, deceased, which was admitted to probate on May 24, 1972. Subsequently, his three daughters petitioned the county court to be named as pretermitted heirs.
The will, except for attestation, provides as follows:
"I, Edward M. Blank, of Bartlett, North Dakota, being of sound mind and memory, and mindful of the uncertainties of this life, do hereby make, publish and declare this to be my last will and testament, hereby revoking any and all prior wills made by me.

"I.
"I direct that all of my funeral expenses, expenses of last illness, income and estate taxes and costs of administration of my estate, and all of my just debts be fully paid.

"II.
"I give, bequeath and devise all the rest, residue and remainder of my property, whether real or personal, and wheresoever situated, unto Viola M. Wolfgram, as her own absolutely, forever.

"III.
"I hereby nominate and appoint Viola M. Wolfgram, as the executrix of this my last will and testament, and it is my desire that she not be required to furnish bond as said executrix.
"IN WITNESS WHEREOF I have hereunto subscribed my hand to this my Last Will and Testament this 12th day of April, A.D., 1962.
 [Signed] "Edward M. Blank"
The following is a summary of the pertinent life history of Edward M. Blank. *817 The date of the marriage of Edward and Julia Blank is unknown. Three daughters were born of this marriage. Mrs. Mary Lou Kosloski was born December 30, 1935; Mrs. Dorothy Edin was born March 8, 1937, and Mrs. Audrey Kronnenberg was born October 11, 1941. Edward M. Blank and his wife, Julia, operated a small farm near the city of Rice in Benton County, Minnesota. They sold this farm about the year 1952 and thereafter he was employed as a construction worker. Their oldest child, Mary Lou, left home about the year 1951 when she was 16 years of age. She testified that she had had no contact whatsoever with her father since the late fifties. The second child, Dorothy, left home about the year 1953 when she was 17 years of age; and their youngest child, Audrey, left home about the year 1957 when she was 15 years of age.
Edward M. Blank left his home and his wife, Julia, during the year 1957. He returned for occasional short visits during the subsequent year but never returned thereafter. The three children kept in contact with their mother but the whereabouts of their father was not known to them until the latter part of the year 1963 when Audrey was informed by her uncle that his brother, Edward M. Blank, was residing on a farm near Devils Lake, North Dakota. Dorothy and Audrey traveled to the farm near Devils Lake during August, 1964, to visit their father. This was the only contact which Edward M. Blank had with any of his children from 1957 to the date of his death March 6, 1972. Edward M. Blank's wife, Julia, died at St. Paul, Minnesota, July 11, 1972. The order to show cause which was before the county court for Ramsey County, North Dakota, September 12, 1972, also included the matter of why the estate of Julia L. Blank, deceased, should not be allowed the widow's statutory exemption as provided by Section 30-16-06 of the N.D.C.C. The county court determined from the evidence adduced that Julia L. Blank was not and never had been a resident of the State of North Dakota and did not qualify for said statutory exemption. The order of the county court was not appealed and so there is no claim pending by the estate of Julia L. Blank, deceased.
The single visit by Dorothy and Audrey with their father which took place at his farm yard in the automobile in which the daughters were traveling was of about one hour in duration. It was the only contact between Edward M. Blank and any of his children from the year 1957 to the date of his death March 6, 1972.
During the years 1957 to 1959 Edward M. Blank worked in the Crary, North Dakota, vicinity during the summer time and lived with Herman and Viola M. Wolfgram, husband and wife, in their home at Crary during the winter months. Herman and Viola M. Wolfgram never had children. In the year 1959 Herman and Viola M. Wolfgram and Edward M. Blank purchased as tenants in common three quarters of farm land on a contract for deed. After purchase of this farm land, Edward M. Blank lived continuously with the Wolfgrams in Crary until the year 1961 when they all moved from Crary to a dwelling house located on the farm. They carried on farming operations together until the death of Herman Wolfgram during the year 1962. Edward M. Blank executed his last will and testament, which is the subject of this appeal, on April 12, 1962. Viola M. Wolfgram and Edward M. Blank continued to reside together in their farm home and to operate their farm until his death March 6, 1972. Upon the death of Herman Wolfgram his estate was inherited by Viola M. Wolfgram so that she then owned a two-thirds interest in the farm land and Edward M. Blank owned a one-third interest in the farm land pursuant to the contract for deed.
From the time of the purchase of the farm land in 1959 until 1971 no payments had been made on the principal as provided in the contract for deed. During the year 1971 Viola M. Wolfgram and Edward M. *818 Blank contacted Taylor Howard, manager of the Federal Land Bank Office in Devils Lake, North Dakota, in regard to obtaining a loan for the purpose of paying off the contract for deed. In connection with the application for a loan from the Federal Land Bank during the year 1971, Viola M. Wolfgram and Edward M. Blank contacted Attorney Francis E. Foughty of Devils Lake, North Dakota, and he prepared a quit claim deed whereby Viola M. Wolfgram conveyed her two-thirds interest in the three quarters of farm land to Edward M. Blank. Thereafter, Edward M. Blank executed a mortgage and a note to the Federal Land Bank for $27,300.00. The contract for deed was paid off and deed was issued by the vendor to Edward M. Blank subject to the mortgage of the Federal Land Bank.
First, the appellants specify that the trial court erred in all instances where the court allowed testimony of Viola M. Wolfgram concerning conversations, dealings and transactions with Edward M. Blank, deceased, claiming that such testimony was precluded by Section 31-01-03, N.D.C.C., referred to as the "dead man's statute".
Appellant's specification of error rests on that part of Section 31-01-03, N.D.C.C., which provides:
"In any civil action or proceeding by or against executors, administrators, heirs at law, or next of kin in which judgment may be rendered or ordered entered for or against them, neither party, except as provided in Section 31-01-04 and Section 31-01-05, shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party. * * *."
Counsel for appellants objected throughout the trial to testimony of Viola M. Wolfgram on the grounds that such testimony was barred by Section 31-01-03, N. D.C.C. She testified over objection that throughout the 15 years during which she was acquainted with Edward M. Blank he always represented himself as a single man. She also testified that she did all of the housework prior to and after the death of her husband, Herman Wolfgram, in the year 1962, and that subsequent to her husband's death she also worked in the fields with Edward M. Blank all the time; that she helped make hay, plow and cultivate because they were unable to hire a man to assist with the farm work. Viola M. Wolfgram also testified as to the execution of wills by herself and Edward M. Blank on April 12, 1962, the contract for deed for purchase of the three quarters of farm land during the year 1959, the conveyance of her two-thirds interest in said land by quit claim deed to Edward M. Blank and the mortgage on said land which he gave to the Federal Land Bank to secure the note for $27,300.00 which was used to pay off the contract for deed during the year 1971.
Much of her testimony concerned transactions with the decedent [see Knoepfle v. Suko, 108 N.W.2d 456 (N.D.1961) for a discussion of the meaning of the term "transaction" as used in Sec. 31-01-03, N.D. C.C]. However, we conclude that her testimony was not barred by the statute.
In Keller v. Reichert, 49 N.D. 74, 189 N.W. 690 (1922), the admission of a will to probate was contested by the decedent's heirs who alleged lack of testamentary intent, fraud, and undue influence rendering void the will sought to be admitted to probate. The decedent's fiancee, a party to the action and the proponent of the will, testified as to the execution of the will and as to what the decedent said and did at the time.
We said:
"These questions involve a consideration of the competency and probative force of the testimony of the respondent [fiancee]. If her testimony was competent, and if the facts are as she purported to *819 detail them, then the will in controversy here is valid ...
* * * * * *
"The probate of a will clearly does not come within the terms of the [dead man's statute]. That is not a claim or demand which arose out of any transaction with the testator during his lifetime, existing at his death, and which might be enforced against him if living, and which his executors, administrators, heirs at law or next of kin are compelled to prosecute or defend in his place. That is a judicial inquiry whether the instrument before the court is the last will and testament of the deceased and entitled to be admitted to probate as such." 189 N.W. 690 at 691, 692.
The South Dakota Supreme Court in In re Swenson's Estate, 57 S.D. 90, 230 N.W. 884 (1930), considered the nature of extrinsic evidence offered to show intentional omission by a testator to provide for an heir and characterized such evidence as follows:
"[W]e hold that the court did not err in admitting extrinsic evidence to show an intentional omission by the testator to provide in his will for appellant. Such evidence does not dispute but confirms the expressed will of the testator. There is no uncertainty in the will. The uncertainty arises in the policy of the law to doubt the ability of the testator to express his will because of inadvertence or forgetfulness. Evidence showing that there was no forgetfulness or mistake belongs to that same general class as evidence of testamentary capacity." 230 N.W. 884, at 887.
We believe that the evidence of any party bearing on the issue of whether a testator intentionally or unintentionally omitted to provide for an heir under 56-04-17, N. D.C.C., is not barred by the provisions of the North Dakota "dead man's statute" for the reason that "evidence showing that there was no forgetfulness or mistake belongs to that same general class as evidence of testamentary capacity." In re Swenson's Estate, supra.
The introduction of such evidence by a party would not be barred by the dead man's statute since it is not offered to forward or defend "a claim or demand which arose out of any transaction with the testator during his lifetime, existing at his death, and which might be enforced against him if living, and which his [representatives] are compelled to prosecute or defend in his place." Keller v. Reichert, supra. The intent and purport of such evidence is to assist the court in determining the intent of the testator and is therefore exactly analogous to the case of a will contest where the testamentary intent of the testator (or lack thereof) is in issue.
The appellants raise as their second issue the assertion that the trial court erred in admitting extrinsic evidence bearing on the issue of whether or not the testator intentionally omitted to provide for the appellants in his will. The appellants rely on California case law in pressing this issue and, more particularly, on Estate of Torregano, 54 Cal.2d 234, 5 Cal.Rptr. 137, 352 P.2d 505 (1960) which, as the appellants point out, is exhaustively annotated in an annotation at 88 A.L.R.2d 616. A portion of that annotation dealing with North Dakota case law reads as follows:
"Under statutes providing that an omitted child, or issue of a deceased child, should be entitled to a portion of the testator's estate, `unless it appears that such omission was intentional,' the courts, except in California and Oklahoma, have uniformly held or recognized that extrinsic evidence was admissible to prove that the testator intended to disinherit an omitted child.
* * * * * *
"North Dakota.Hedderich v. Hedderich, (1909) 18 ND 488, 123 NW 276; Schultz v. Schultz (1910) 19 ND 688, 125 NW 555; Lowery v. Hawker (1911) 22 ND 318, 133 NW 918, 37 LRA NS *820 1143 (recognizing rule); Re Baur's Estate, (1952) 79 ND 113, 54 NW2d 891." 88 A.L.R.2d 616 at 629, 630.
In Schultz v. Schultz, supra, we alluded to the California case law relied on by the appellants when we said:
"This statute [the pretermitted heir statute, now Sec. 56-04-17, NDCC] was involved in the case of Hedderich v. Hedderich, 123 N.W. 276, recently decided by this court, and in disposing of the petition for rehearing we held that the fact that the lawful issue of a testator is omitted from his will merely raises a prima facie presumption that such issue was not intentionally omitted, and that such presumption is rebuttable by extrinsic proof. We there said: `That such facts merely raise a prima facie presumption that he was not intentionally omitted, and that such presumption is rebuttable by evidence extrinsic the will is well established. [citations omitted] These authorities deal with a statute identically the same as our own.' We are aware that the authorities are in conflict upon this question, and that it has been definitely determined in some states, under a statute similar to our own, that parol evidence is inadmissible to show that such omission was intentional, and that the question must be determined from the will itself. We are entirely satisfied with the soundness of the rule announced in the foregoing cases, and it would serve no useful purpose to cite the authorities holding to the contrary."
Thus we hold that the trial court did not err in admitting extrinsic evidence bearing on the issue of whether the testator intentionally omitted to provide in his will for the appellants.
Thirdly, the appellants assert as insufficiency of evidence that the weight of the evidence as adduced at trial does not support the finding of the court that Edward M. Blank, deceased, abandoned his children, and intentionally omitted them from his last will and testament.
Appellants' assertion of insufficient evidence is based on the burden which Section 56-04-17, N.D.C.C., places upon the appellee in overcoming the presumption that theomission to provide for children by the testator was unintentional.
Section 56-04-17 provides:
"When any testator omits to provide in his will for any child of his, or for the issue of any deceased child, unless it appears that such omission was intentional, such child, or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in Section 56-04-16."
Section 56-04-17 raises a prima facie presumption that children are not intentionally omitted from a will, however, such presumption is rebuttable by extrinsic evidence and parol testimony.
"The omission to provide for a child or the issue of deceased children in a will merely raises a prima facie presumption that such issue were not intentionally omitted and such presumption is rebuttable by extrinsic evidence." Syllabus 5. In Re Baur's Estate, 79 N.D. 113, 54 N.W.2d 891 (N.D.1952). See also Schultz v. Schultz, supra.

"(A) presumption takes the place of evidence unless and until evidence appears to overcome or rebut it, and when evidence sufficient in quality appears to rebut it the presumption disappears and thereafter the determination of the issues depends upon the evidence with the requirement as in other civil actions that the party having the affirmative of the issue involved in order to succeed shall sustain his position by a preponderance of the evidence." Johnson v. Johnson, 104 N.W.2d 8, at page 12 (N.D.1960).
The presumption merely places upon the person against whom it is employed, *821 the burden of going forward with the proof.
The appellants, Mary Lou Kosloski, Dorothy Edin and Audrey Kronnenberg, testified that they quit school before completing high school and left the home of their parents while 15 to 17 years of age to take employment. After their father, Edward M. Blank, left their mother, Julia, and his home about the year 1957 they had no contact with him whatsoever, except for a visit with him by Dorothy and Audrey of about one hour duration in Audrey's automobile in the year 1964. Edward M. Blank died March 6, 1972. Therefore, except for the one hour visit with Dorothy and Audrey he had no contact with his wife and daughters for the last 15 years of his life.
The testimony of the appellants clearly fails to show an unintentional omission by their father to provide for them in his will although, of course, they were entitled to rely on the presumption afforded them by Section 56-04-17, N.D.C.C.
On the other hand, the testimony of witnesses for the appellee and the appellee confirms that there was no inadvertence or forgetfulness on the part of Edward M. Blank in omitting to provide in his will for appellants.
Ralph J. Erickstad, now Chief Justice of the North Dakota Supreme Court, prepared and witnessed the execution of Edward M. Blank's will April 12, 1962, while Erickstad was a practicing attorney in Devils Lake, North Dakota. Erickstad also prepared and witnessed the execution of Viola M. Wolfgram's will April 12, 1962, in which she gave all of her property to Edward M. Blank. This will was received in evidence as appellant's exhibit 1. Erickstad testified by deposition that he believed Edward M. Blank to be without a family and if he had known of any spouse or children there would have been a reference to them in the will. Francis E. Foughty, a practicing attorney in Devils Lake, North Dakota, testified that he prepared income tax returns for Edward M. Blank for the years 1964 through 1967 and that Edward M. Blank represented himself as a single person on the income tax forms. Also as a part of the transaction for a loan from the Federal Land Bank during the year 1971, Attorney Foughty prepared a quitclaim deed by which Viola M. Wolfgram conveyed her two-thirds interest in the three quarters of farm land to Edward M. Blank. Attorney Foughty testified:
"I had probated Mrs. Wolfgram's husband's estate and was rather reluctant to make the deed. And I suggested that at least a will should be made to protect Mrs. Wolfgram, at that time. I had no knowledge of a will. And they both advised me that the matter had been taken care of."
Taylor Howard testified that he was and had been manager of the Federal Land Bank Association Office in Devils Lake, North Dakota, since 1960. He had known Edward M. Blank "probably before 1963" through three or four business visits in his office. Mr. Howard testified that Edward M. Blank signed an application for loan April 30, 1971, which showed him to be not married and without children.
A question by Judge O'Keefe and the response of Mr. Howard follows:
Q What did Mr. Blank tell you as to his marital status, if anything?
A He said he was not married.
Mrs. Riediger testified that she farmed in the Crary area, that she had known Edward M. Blank "for around ten years" and she had had conversations with him many times. She responded to questions by appellee's attorney, Melvin Christianson, as follows:
Q Did he [Edward M. Blank] ever relate to you whether or not he was married?
*822 A No. He did not. He said he was going to get married one time and his girl friend run [sic] away so he never did get married.
Q He told you he never was married?
A Right.
The trial court found that the daughters left their family home as teenagers during the years from 1951 to 1956, that their father left the home in 1957, and that except for the one hour visit with him by daughters Dorothy and Audrey, in 1964, there was no contact between the father and his daughters during the remainder of his life. He died March 6, 1972. These findings were based on the testimony of the daughters.
The trial court made further findings that Edward M. Blank, in 1959, with Herman Wolfgram and Viola M. Wolfgram jointly purchased three quarters of farm land on a contract for deed. This fact was disclosed through the testimony of Mr. Howard and Mr. Foughty and corroborated the testimony of the appellee. The trial court further found that Edward M. Blank and Viola M. Wolfgram made wills April 12, 1962, leaving all their property to each other. The wills of Edward M. Blank and Viola M. Wolfgram were received in evidence and Erickstad testified by deposition that he prepared the wills. The trial court further found that Edward M. Blank represented to all that he was a single man and was silent as to the existence of his children. This finding was testified to by Chief Justice Erickstad, Mr. Foughty, Mr. Howard and Mrs. Riediger, and corroborated the testimony of the appellee.
The scope of review of the trial court's findings on an appeal to this court from a case tried without a jury is limited by Rule 52(a) of the North Dakota Rules of Civil Procedure, which provides in part:
"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."
In re Estate of Elmer, 210 N.W.2d 815 (N.D.1973), involved an appeal from a judgment of the district court which set aside a decree of the county court. We said:
"While we place great reliance, as we must, on the findings of the trial court [Rule 52(a), N.D.R.Civ.P.], we must also recognize that the cutting edge of that rule is at least dulled by the fact that this case has previously been decided by two trial judges, the county judge who heard it in the first instance and the district judge who heard it de novo without a jury in the second instance, and that the first upheld the will and the latter denied it probate. While we do not have a record of the proceedings in the county court, we have heard from one of counsel that the testimony was similar in both courts.
"Nevertheless, we are bound by Rule 52(a). We are bound by it, whether we consider the decision of the lower court as conclusive upon us as to issues of fact as a jury verdict is, or whether we are bound by a slightly less severe standard, as the dissent urged in Kleinjan v. Knutson, 207 N.W.2d 247 (N.D.1973).
* * * * * *
"A finding is `clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. [citation omitted]."
We have reviewed the evidence and conclude that we cannot hold the findings of fact of the trial court to be clearly erroneous. On the contrary we find that the evidence clearly supports the trial court's findings that Edward M. Blank intentionally omitted to provide for his children in his will.
*823 The order of the trial court therefore is affirmed.
KNUDSON, Acting C.J., and TEIGEN, VOGEL and PAULSON, JJ., concur.
The Honorable RALPH J. ERICKSTAD deeming himself disqualified did not participate; the Honorable A. C. BAKKEN, Judge of the First Judicial District sitting in his place.